DUNCAN, Defendant in Error, v. MATNEY, Plaintiff in Error.

1. In order that the defendant in an execution may recover damages against a sheriff for an irregularly conducted sale of property by such sheriff, he must show some loss or damage resulting to himself as a natural and legal consequence of the irregularities and improprieties complained of; he can not fix the measure of his own damages by his voluntary act in paying

money to recover back from the execution purchaser the property alleged to have been irregularly sold.

2. To constitute a valid levy of an execution on real estate, it is not necessary that notice of the levy should be given by the sheriff to the defendant in the execution; nor is it necessary that he should go on the land to make the levy, if he is sufficiently informed in relation to it to describe it properly.

3. A sheriff succeeding to office upon the resignation of his predecessor must proceed to do all things remaining to be done and performed in relation to the execution of process commenced and partly executed by his predecessor, or by the coroner, provided such acts in part execution are legal and regular.

4. It will not invalidate a levy in real estate that the name of the county in which the land is situated is not stated in the advertisement of sale.

5. The law is silent as to what shall constitute the evidence of a levy; it will be sufficiently regular if the memorandum of the levy be made upon a separate piece of paper and copied upon the writ of execution before its return; the officer may use his advertisement as evidence of the levy in making his return to the writ.

6. When an instrument, of whatever solemnity, is offered merely as containing an admission against the party executing it, it is competent for him to explain it.

### Error to Buchanan Circuit Court.

This was an action to recover damages for the sale of plaintiff's land by the defendant, as sheriff of Buchanan county, by virtue of an execution. Plaintiff alleged in his petition that about the 14th day of December, 1857, defendant was sheriff of Buchanan county; that a certain judgment had previously been rendered against plaintiff; that an execution issued on said judgment and "was placed in the hands of the sheriff of Buchanan county for collection;" that about said 14th of December, 1857, defendant, under said execution, sold all the right, title and interest of plaintiff in and to west half of the south-west quarter of section twenty-six, in township fifty-six, of range thirty-five; "that no legal levy had ever been made on said land so sold by defendant or any one else; that defendant never advertised said land for sale, but sold without advertising the same for sale in due form of law;" that plaintiff was never notified by defendant or any one else of said execution so that he could make his selection as provided by statute; that plain

tiff had always a sufficiency of personal property not exempt from execution. " Plaintiff further states that for the purpose of getting back said property so sold he had to pay out and expend and otherwise incur liability to the amount of two hundred dollars. Plaintiff further states that by reason of said illegal levy, proceedings and sale of said land by said defendant, he has been damaged in the sum of two hundred dollars, and for which he prays judgment."

At the trial the plaintiff adduced the following facts in evidence. He introduced S. N. Sheridan as a witness, who testified that he was sheriff of Buchanan county about the 4th of November, 1857, when the execution referred to in the petition came into his hands as sheriff. The execution was dated November 4, 1857. He testified that he never notified Duncan that said writ was in his hands; that when he resigned his office of sheriff he handed over all the papers in his hands as sheriff, including this execution, to W. R. Penich, the coroner. Penich, the coroner, testified that the writ came into his hands to be served about 23, 4, 5, 6 or 7th of November, 1857; that with it was the copy of an advertisement for the sale of land; that from this copy he endorsed on said execution a levy of said writ, and handed in the copy of the advertisement to the Journal office to be published in the St. Joseph Weekly Journal, a paper published in St. Joseph, Buchanan county; that he endorsed said levy on said writ without leaving the city of St. Joseph and without notifying the plaintiff thereof; that he handed over the writ of execution to Matney, the defendant in this suit. The execution with the endorsement thereon was introduced in evidence. The endorsement was as follows : " I levied the within execution on the following described real estate—*eighty acres of land, west half of south-west quarter of section twenty, township fifty-six, range thirty-five*—also eighty acres of land, west half of north-west quarter of section twenty-six, township fifty-six, range thirty-five—also one hundred and twenty acres of land, east half and south-west south-west quarter of section twenty-three, township fifty-six,

range thirty-five. Done in Buchanan county, in Missouri, November 26, 1857. Advertised for sale in Journal, December 19, 1857. W. R. Penich, coroner." "I return the within execution satisfied in full. December 19, 1857. James H. Matney, sheriff."

The plaintiff also introduced in evidence the deed of the sheriff Matney. This deed recites the judgment, the issuing of the execution " directed to the sheriff of said county, and to me, the said sheriff, delivered, by virtue of which said writ or execution I, as sheriff aforesaid, did on the 26th of November, 1857, levy upon and seize all the right, title and interest, claim, estate and property" of the said Duncan in and to the following described real estate, to-wit: *Eighty acres of land, west half of south-west quarter of section twenty-six, township fifty-six, range thirty-five*—also the west half of the north-west quarter of section twenty-six, township fifty-six, range thirty-five—also one hundred and twenty acres, east half and south-west quarter section twenty-three, township fifty-six, range thirty-five." The deed then recites that previously to the day of sale he gave more than twenty days' notice of the time and place of sale by causing a full description of said property to be advertised in the *St. Joseph Weekly Gazette;* that he did on the 19th of December, 1857, sell a portion of said real estate, to-wit, the *west half of the south-west quarter of section twenty-six, township fifty-six, range thirty-five.* He then proceeds to convey said tract to the purchasers.

The defendant having duly proven advertisement of sale published in the St. Joseph Weekly Journal, offered the same in evidence. The court ruled it out on objection of plaintiff. It was as follows : " Sheriff's sale. By virtue of an execution to me directed issued from the clerk's office of the Buchanan court of common pleas, in favor of Benjamin F. Loan, and against Bartly M. Duncan and Augustus Mark, I will, on the 19th day of December, 1857, sell to the highest bidder, for cash in hand, at the court-house, in the city of St. Joseph, Buchanan county, Missouri, between the hours of

nine o'clock A. M. and five o'clock P. M. of said day, and whilst the said court is in session, all the right, title, interest and claim of the said Bartly M. Duncan of, in and to the following described real estate, viz: *Eighty acres of land, west half of south-west quarter of section twenty-six, township fifty-six, range thirty-five* — also eighty acres of land, west half of north-west quarter of section twenty-six, township fifty-six, range thirty-five—eighty acres of land, south half of north-west quarter of section twenty-three, township fifty-six, range thirty-five — also one hundred and twenty acres of land, east half south-west south-west quarter of section twenty-three, township fifty-six, range thirty-five, to satisfy said execution. [Signed] W. R. Penich, coroner. November 27."

The court, at the instance of the plaintiff, gave the following instructions to the jury: "1. There is no evidence before the jury that said land sold was ever advertised for sale; and no sale of land by a sheriff is a legal sale on his part without advertisement. 2. If the jury believe from the evidence that defendant sold said land of plaintiff without first having advertised the same, either himself or some one other to advertise for sale the said lands, they will find for plaintiff, and assess his damages at such sum as he has sustained thereby. 3. Defendant admits that he never advertised said land for sale."

The court gave the following instructions asked by defendant: "1. Unless the plaintiff had some title to the land mentioned in the petition the jury will find for the defendant. 2. This defendant is not liable in this action for any omission on the part of Sheridan or Penich, whilst they had the execution given in evidence in their hands as officers, failing to perform acts required by law and said writ to be performed by them as such officers. 3. The levy endorsed on said execution is evidence that said land was seized by the officer to satisfy said execution. 4. Unless the jury believe from the evidence that the plaintiff has sustained some damage by the sale of said land, this defendant will find for him. 5. Un-

Duncan v. Matney.

less the jury believe from the evidence that the land mentioned in the petition was not levied upon by virtue of said execution by an officer authorized to levy the same, or was sold by defendant without having been first advertised for sale for twenty days prior to the time fixed for such sale, or by full publication in a newspaper printed in said county, the jury will find for the defendant." The court refused the following instruction asked by defendant: " 6. The recitals in the sheriff's deed read in evidence are *prima facie* evidence of the matters contained in such recitals."

The jury found for plaintiff.

*Loan*, for plaintiff in error.

1. The court erred in excluding the notice of sale offered on part of defendant. The instructions given for plaintiff were erroneous and calculated to mislead. The motions for a new trial and in arrest should have been sustained.

*Vories & Vories*, for defendant in error.

I. The advertisement was properly excluded. The land advertised and sold by the sheriff's deed had never been levied on. The return on the execution shows the tract levied on to have been the west half of the south-west quarter of section twenty, township fifty-six, range thirty-five. The land sold was in section twenty-six. Neither the levy nor the advertisement states in what county the land was situated. (R. C. 1855, p. 746, § 45.) There was a variance between the advertisement and the deed with respect to the paper in which the advertisement was made.

II. The court committed no error in giving the first and third instructions. The land was not advertised as the law directs. The advertisement shows land upon which no levy had been made. The court committed no error in refusing the sixth instruction.

SCOTT, Judge, delivered the opinion of the court.

This is one of those suits, becoming so common under our present practice act, from which it is impossible to ascertain

what legal idea was in the mind of the attorney at the time he wrote the petition. It is alleged that the plaintiff, "for the purpose of getting back the property illegally sold, had to pay out and expend and otherwise incur liability to the amount of two hundred dollars." The petition then concludes with the averment that, by reason of said illegal levy, proceedings and sale of said land, the plaintiff has been damaged in the sum of two hundred dollars, for which he prays judgment. We infer from this that the plaintiff claims as damages, and as the measure of the loss he has sustained, the two hundred dollars he paid to obtain the restoration of the property sold. It is admitted then that the sale passed title. If that was the case, then the irregularity of the sale did not make it invalid. If the plaintiff then sustained an injury, it must have been by reason of the irregularities of which complaint is made. Now how does he make it appear that the payment by him of two hundred dollars was a natural and legal consequence of the irregularities? If any irregularity had been committed by the officer in conducting the sale, and that irregularity, being known to the by-standers, had damped the ardor of bidders or in any manner caused a diminution of the sum that would otherwise have been realized from the sale, the plaintiff would be entitled to recover the damages he could show he had sustained by reason of the misconduct of the officer; but he does not allege that the property was sacrificed, or that the sale was injuriously affected by the matters of which he complains. That he gave two hundred dollars to regain his property is no evidence of the extent of the loss he sustained, or that payment was no legal and natural consequence of the misconduct of the officer. Such payment may have been prompted by motives with which the sheriff had nothing to do and which ought not to have affected him. Had his malice prompted the plaintiff to pay ten thousand dollars for the restoration of his property, could he have expected to recover that sum? He had no right to fix the measure of his damages by a voluntary payment.

We will now examine the breaches of duty of which the plaintiff complains the officer was guilty. One of them is, that no levy was made. Our statute regulating executions declares that the word "levy" shall be construed to mean the actual seizure of the property by the officer charged with the execution of the writ. (Section 74.) This, of course, only applies to property capable of being seized. The act regulating fees directs that when an execution is served on real estate, the officer shall be bound to go on the land or sufficiently near it if necessary in order to describe it properly. (Section 13.) Now it will be seen that the law is silent as to any notice to the defendant in the execution being requisite to constitute a valid levy, and also as to the manner in which a levy shall be evidenced. There is nothing in the case which shows that it was necessary to go on land to make a levy, which is not required if the officer is otherwise sufficiently informed in relation to the property to describe it properly.

The twenty-fifth and thirty-fourth sections of the act regulating executions giving the defendants the right to elect on what property executions shall be levied, and the order in which the property shall be offered for sale, are silent as to notice by the sheriff to those defendants. This is a subject for legislation, and the courts can not, without assuming duties which do not properly belong to them, make rules in relation to it. A good officer, when it is practicable, will always inform a party of an execution he may have against him, if he believes he is not aware of it, and will confer with him before he makes a levy. But the defendant may be out of the way; he may be out of the county; or, knowing the shortness of time in which a levy and advertisement must be made, he may keep out of the reach of the officer, and thus prevent a levy in time to make a sale before the return day of the process. In this way many abuses would creep in, which would be beyond any power of correction the courts possess. The law seems to have left to defendants, against whom executions have been issued, the duty of taking notice

of the fact. It is generally known to defendants, and laws are adapted to the cases which most frequently occur. In the event of abuse by the officer, or of collusion with the plaintiff or others, the courts can give redress by virtue of the control they possess over the execution of their process.

It is singular that, under the circumstances, the court should have instructed the jury that the defendant admitted that he did not advertise the land. The defendant, in making the sale, acted as the successor in office to another. He had been in office but a few days before the sale. In order to make a sale at the return term of the court it was necessary to adopt the levy and advertisement of his predecessor and carry on the execution of the process begun by the officer whom he succeeded, and it is stated expressly in the answer that the land was advertised by the officer whom he replaced, and yet the court instructs the jury that he admitted that he did not advertise the land, and gives no explanation of the object of the instruction. Now what was the purpose of such an instruction? Was it to declare that the successor in the sheriff's office could not adopt the act of his predecessor in part execution of process? Was he not bound to do it? Could he subject the defendant to the cost of another levy and advertisement, without incurring a liability to an action? It is not maintained that the successor must adopt the acts of his predecessor if he is satisfied that they are illegal and irregular.

The plaintiff does not show that he sustained any damage by reason of the omission in the advertisement of the name of the county in which the lands were situated. It is generally known that the sheriff of one county can not, under an execution, sell lands lying in another; nor is it shown how he was damaged by the mistake he made in copying the description of the land levied on. The evidence shows that the land advertised was the land sold, and it is hard to see how a mistake in copying a levy from another paper on the back of the execution could prejudice the plaintiff. If the levy was properly made, a mistake afterwards committed in copy-

ing it could not affect the legality of the sale. We have already said that the law is silent as to what shall be the evidence of a levy; but if a levy is made, and a memorandum made of it on a separate piece of paper, and that memorandum before the return of the writ is copied on it, we see no objection to the regularity of such a course, nor to the officers using his advertisement as evidence of a levy in making his return to the writ. The plaintiff's own witness explains this whole matter.

The court erred in rejecting as evidence the advertisement of the sale. If it be said that it was inadmissible because it contradicted the defendant's deed, it may be answered that although a deed can not be contradicted when used as evidence of the agreement and understanding of the parties to it, yet this deed was offered in evidence by the plaintiff merely as an admission of the defendant, and the rule is, that when an instrument, of whatever solemnity it may be, is offered merely as an admission made by the party executing it, it is always competent to him to explain it, and to show that he was under a mistake in making it, or to prove any other circumstances which will do away with the effect of the admission.

Reversed and remanded. The other judges concur.

