JOHN S. BILBY, Respondent, v. JAMES HARTMAN *et al.,* Appellants.

Kansas City Court of Appeals, February 6, 1888.

1. EXECUTION—WHAT IS A VALID LEVY, AND WHAT IT IMPLIES.—A levy (under a writ of execution) implies a seizure ; and where the character of the property is such that it may be taken possession of and removed, the officer should do so ; or if left in its place, he should either remain with it, or place some one over it as his deputy or bailee, so as to exercise exclusive dominion or control over it, and to notify the public not to deal with it. But regard is always had to the character and situation of the property.

2. —— —— GROWING CROP—RULE APPLICABLE TO SUCH SEIZURES.—Where the species of property is such that actual possession cannot be taken, as a growing crop, then some notorious act, as nearly equivalent to actual seizure as practicable, may be substituted for it. In such case the officer should go upon the premises and announce that he seizes the crop to answer the exigencies of the writ, or call disinterested parties to witness his open assertion of the levy. The law does not require that he should make his indorsement of the levy on the writ at the time; it is sufficient that he makes it before the return of the writ. The date of the levy may be proved by parol as also the proceeding at the time of the levy.

3. —— STATUS OF PROPERTY AFTER SEIZURE.—After the seizure of the property under the writ, it is in the custody of the law, and, in general, when things are *in custodia legis*, they cannot be interfered with by a private person, or by another officer acting under the authority of a different court of jurisdiction. They are in the custody of the law until the proper time for their sale, and until such a reasonable time thereafter as may be necessary for the purchaser to remove them. And it is competent for the officer making the levy and advertisement to proceed to execute the sale, even after the expiration of his term of office, nor is any writ of *venditioni exponas* necessary.

APPEAL from Atchison Circuit Court, HON. C. A. ANTHONY, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action of replevin to recover the possession of a crop of corn standing in the field. The controversy grew out of the following state of facts: In June, 1886, Hunter & Brother, who are defendants herein, recovered judgment in a justice's court against John C. Hunt, A. L. Hunt, and W. T. Hunt, for $182.12. Execution issued thereon on the fourth day of June, 1886, and on the same day the writ was received by the constable. On the sixteenth day of July, 1886, he went to the farm, where W. T. Hunt and A. L. Hunt lived, and who seemed to have been raising crops on said farm, but on separate parcels, and separately from each other, and having first learned that there was a chattel mortgage on the crop raised by W. T. Hunt, he sought out the

corn of A. L. Hunt, then growing in the field. He went to the field, and sitting in his buggy, and in the presence of W. T. Hunt, made the following memorandum in his pass-book:

"I have this sixteenth day of July, 1886, levied on one hundred and sixty acres of corn, being on the northwest quarter of section No. 33, township 64, range 38, as the property of A. L. Hunt, to satisfy debt and costs of judgment to ———.

"A. A. WINDEL, C. C. T."

The last word of the memorandum is illegible. He told W. T. Hunt that he levied on the corn, the defendant, A. L. Hunt, not being at home. W. T. Hunt then told him that this corn was also mortgaged to the plaintiff. The constable testified that when W. T. Hunt informed him of this mortgage, he had it in mind to examine the record when he returned, and if he found there was such a mortgage he would not make the entry on the execution. He found no such mortgage, and in a few days afterwards made the formal entry of the levy on the writ. He had mislaid the pass-book in which he made the memorandum of his levy, and did not recall the date at the time, and so he entered it up as of August 3. This return with other indorsements on the execution are as follows.

" Received this execution June 4, 1886.

"A. A. WINDEL."

" I have this day, third of August, 1886, levied on one hundred and fifty acres of corn standing in the field, being on the northwest quarter of section 33, township 64, range 38, as property of A. L. Hunt.

" A. A. WINDEL, C. C. T."

"I advertised fifteen hundred bushels of corn, gathered from the crop herein levied upon for sale, on the thirtieth day of November, 1886, but by day of sale, the whole had been removed without my consent to parts unknown. I advertised balance standing in field for sale December 16, 1886, and that day sold about eight

acres, making about $———, the balance having been spirited away.

"A. A. Windel, Constable."

"September 3, 1886.—By request of the plaintiff, this execution is hereby renewed for ninety days of this date.

"W. J. Harrington, Justice."

Attached to the execution on a separate paper was the following memorandum :

"I think the last corn advertised for sale was two hundred bushels, more or less, as near as I can tell. The return on my execution is not complete, for the reason that R. Hunter & Brother bought it at sale at eleven cents per bushel, and they were to gather the corn and report it to me, so I could complete my return ; and before this was done the corn was replevied and the report could not be made. It is by direction of Lewis & Ramsey, attorneys for Hunter Brothers, that I have not completed my return.

"A. A. Windel, Constable."

After making the levy the constable seems to have done nothing more until about the first of November, when he again went to the Hunt farm to see about collecting the debt. When he reached the farm he found that A. L. Hunt had gathered a part of this corn, and piled it on another quarter section of the farm. He permitted Hunt to continue so gathering and piling the corn, stating to him that it could be sold there as well as elsewhere. After this he advertised the corn in the pile, supposed to contain about fifteen hundred bushels, for sale on November 30, 1886. On the day of sale the constable and one of the execution plaintiffs went out to conduct the sale ; but on arriving there they found that Hunt and the plaintiff, Bilby, had removed all the corn so advertised, except about twenty bushels. About one-half of the corn was yet standing in the field, and this the constable advertised for sale on the sixteenth day of December, 1886. By that time Hunt and the plaintiff, Bilby, had gathered and gotten out of the way all of the

remaining corn, except about eight acres, which the constable then sold to Hunter & Brother, the execution plaintiffs, who placed the defendant, Hartman, in possession thereof as their agent. The constable testified that the reason the return on the execution did not show the amount of the sale was because the number of bushels could not be ascertained until the corn was gathered and measured, which had not been completed when plaintiff brought this action of replevin. The purchasers at this execution sale took and retained possession of the corn in suit until taken from them under the delivery order herein. A. L. Hunt, it seems, also told the constable that the corn was mortgaged to plaintiff, Bilby.

Plaintiff's testimony tended to show that he, about November 1, 1886, purchased from A. L. Hunt a certain crop of corn grown that year on the northwest quarter of section 33, township 64, of range 38, in Atchison county, about half of it gathered and in a pile, and the other half standing in the field, at twenty cents per bushel, to be paid as the corn was gathered, and removed to plaintiff's place in Nodaway county. No money was paid, but the corn was to be applied on old debts existing prior to June 4, 1886, but that no application has ever, in fact, been made upon any indebtedness, there having been no settlement since betwen Bilby and Hunt. The testimony also showed that Bilby had a chattel mortgage, dated August 16, 1886, upon the same crop, to secure a note of $877.30, dated May 29, 1886, mortgage recorded August 19, 1886. The chattel mortgage was due one year after date, and possession reserved to said Hunt until maturity.

The court gave an instruction for plaintiff declaring there was no levy in fact of the writ of execution on this corn ; and directed the jury to find for plaintiff if they found that Hunt had sold the corn to plaintiff, etc.

The court refused all the instructions asked by defendants, which submitted, in any form, the sufficiency

of the acts done by the constable to constitute a valid levy of the writ on the corn.

Verdict and judgment for plaintiff, from which defendants have appealed.

Lewis & Ramsay, for the appellants.

I. It is now settled law that a growing crop is personal property and subject to the same process as other personal property. *Garth v. Caldwell*, 72 Mo. 622; Kelly's Justice, sec. 157; *Whipple v. Ford*, 2 Johns. 418; *Hartwell v. Bissell*, 17 Johns. 128. In *Whipple v. Ford*, a crop of wheat was levied upon in December and sold the summer following. The constable made all the levy that was practicable; and actual physical seizure and taking any of the property would have been its destruction. Freeman on Executions, sec. 263; Kelly's Treatise, sec. 160; Herman on Executions, sec. 161.

II. It was not necessary to give public notice of the levy; and even in cases where the property is susceptible of removal it may be left in defendant's hands without invalidating the levy. *Butler v. Peck*, 11 Wend. 548; *Rew v. Barber*, 3 Cowen, 272; Freeman on Executions, secs. 184, 261; *Ray v. Harcourt*, 19 Wend. 495; *Vary v. Watkins*, 23 How. 469. The levy might be good as to the defendant, but not as to a *bona-fide* purchaser. Herman on Executions, sec. 164. In this case not only the levy, but the execution itself, was a lien on the corn (Rev. Stat., sec. 3017), and it attached long before the date either of the Bilby mortgage or his purchase.

III. Bilby having acquired the property on a pre-existing debt, was not an innocent purchaser, and had the writ been levied after the purchase it would still be good. *Ray v. Birdseye*, 5 Denio, 620; Herman on Executions, sec. 328. The return of the officer, which is *prima-facie* evidence, shows a levy during the lifetime of the writ. His testimony shows that he made a memorandum of a levy while in view of the field of corn and in presence of one of the defendants. This was

sufficient evidence of a levy. Herman on Executions, sec. 162. An advertisement of the sale is sufficient evidence of a levy. *Duncan v. Watney*, 29 Mo. 368. "In all cases where the contrary does not appear, a sufficient levy will be presumed in support of a constable's sale." Freeman on Executions, sec. 274.

IV. The levy made during the lifetime of the execution created a special property in the officer, which he might reduce to money by a sale after the return day of the writ, or after his term of office. Freeman's Executions, secs. 268 and 106; Herman's Executions, sec. 207; *Welsh v. Joy*, 13 Pick. 482; *Card v. Hirsh*, 17 Wis. 403. And if the officer refused to sell, a *venditioni exponas* might issue to enforce the same. Freeman, sec. 62. This rule is uniform as to personal property, but courts differed as to real estate; so our statute has adopted the same rule as to real estate. Rev. Stat., sec. 2398. See also *Holmes v. Corbin*, 20 Mo. App. 509, where the court has examined the authorities at length. *McFarland v. Gwin*, 3 How. 717; *Doolittle v. Bryan*, 14 How. 563. Under these authorities, the renewal of the execution was not necessary to keep it alive, but its renewal at the end of the ninety days, and the subsequent trips of the constable to see the defendant, examine the crops, and enforce its execution, all go to show that a levy was not only made, but intended, and that it was only defeated by the fraudulent scheme of Bilby and Hunt in spiriting away the corn. Hunt left the constable to understand that it was "Bilby and the constable for it," and then helped Bilby to spirit away the crop to another county.

V. The constable may have been negligent, but it does not lie in the mouth of either Bilby or Hunt to complain. They were not injured.

WARNER, DEAN & HAGERMAN, for the respondent.

I. The verdict and judgment for the plaintiff was right, unless defendants acquired title to the corn

in question by the alleged sale under the execution in evidence.

II. A levy on personal property means actual seizure by the officer and a reduction of the property to his actual possession so far as practicable. It must be an actual assumption of dominion and control over the property by the officer. *Douglas v. Orr*, 58 Mo. 573, is the leading case in this state on the question of what constitutes a levy, and has been cited with unqualified approval by this court in *Holmes v. Corbin*, 20 Mo. App. 503. The doctrine held in the leading case referred to is, that to constitute a levy, lawful as to third persons, there must be an actual, as distinguished from constructive, seizure by the officers, or an exercise or claim of dominion, the goods being within his power. The facts were: The constable went to the carriage-shop of the defendant in the execution and rolled one buggy a few feet, and without placing any mark upon it, or putting any one in possession of it to hold for him, and without having any possession or control over the house in which he found and levied upon the buggy and other vehicles there, and without informing any person about the shop that he was making, or had made, a levy, he went to the courthouse where he met the attorney of the plaintiff in the execution, and informed him that he had made the levy, and then and there endorsed on the execution a levy. Shortly afterwards the defendant in the execution executed and delivered to the plaintiff a deed of assignment for the benefit of all of his creditors, and on the same day put him in possession of all the property, including that which the constable claimed to have levied on. It was not pretended that either the defendant or his assignee knew anything whatever of the alleged levy prior to or at the time of the assignment. The constable took the property, which he claimed to have levied upon, from the assignee and sold the same, and the assignee brought suit to recover the value of the same. The court says: "The word, 'levy,' as defined by our statute, means actual

seizure; that is, the officer must take actual possession of the goods, and this language would seem to exclude all idea of a constructive possession. There has been much discussion and some difference of opinion as to what constitutes actual possession. It has been said that the true test is, whether enough has been done to subject the officer to an action of trespass, but for the protection of the execution. It has accordingly been held that an actual manucaption of the goods is not necessary to constitute a tortious taking, and that any exercise or claim of dominion, though by mere words, the speaker having the goods within his power, may amount to such a taking as to warrant an action of trespass; that mere making an inventory, and threatening to remove the goods, which is prevented by another giving receipt for them, though they are not touched by the officer, is sufficient. *Connah v. Hale*, 23 Wend. 462. In order to constitute a valid levy as to third persons, the goods must not only be within the view of the officer, but must be subjected to his control. He 'must take actual possession,' which, although the goods are present, can only be done by manual acts, or by an oral assertion that a levy is intended, and which is acquiesced in by those who are present and interested in the question. A levy cannot rest in a mere undivulged intention to seize the property." *Camp v. Chamberlain*, 5 Denio (N. Y.) 198; *Newman v. Hook*, 37 Mo. 207; *Yeldell v. Stemmons*, 15 Mo. 443; *Westervelt v. Pinckney*, 14 Wend. (N. Y.) 123; *Haggerty v. Wilder*, 16 Johns. (N. Y.) 288; *Allen v. McColla*, 25 Iowa, 464; *McVernie v. Overstreet*, 8 Ky. 300. To constitute a valid levy of execution on personal property, the officer must do such acts as would subject him to an action of trespass, but for the protection of the writ. *Minor v. Herriford*, 25 Ill. 344; *Minor v. Smith*, 13 Ohio St. 79; *Bank v. Evans*, 18 Miss. 35; *Levy v. Shockley*, 29 Ga. 710; *State v. Poor*, Dev. & B. (N. C.) 304.

III. The appellants, in their brief, here rest their case upon the proposition that the testimony offered by

them established the validity of the levy.   They call attention in their brief to the statute (Rev. Stat., sec. 3017) making the execution a lien before levy.   This statute cannot possibly avail them unless there was such an actual seizure of the property in the lifetime of the execution, and during the term of office of the constable, as to constitute a valid levy.   This is conceded in their requested and refused instructions.   The sale was made after the execution had expired, and after the plaintiff had purchased the corn, and after the constable's term of office had expired.   "The lien of an execution gives the officer entrusted with its service no general nor special property in the defendant's goods.   The goods may be destroyed or removed from the reach of the writ without giving the officer any right of action.   But the moment a levy is made the rights and remedies of an officer are materially changed; or, more accurately speaking, he, from that moment, is vested with rights and remedies to which he could before urge no valid claim.   He is entitled to retain such possession and control of the property as may be necessary to make it protective under the writ."   Freeman on Executions, 268.

IV.   We claim that if the levy was ever made on the field of corn, it was released after the fifteen hundred bushels had been gathered and were advertised for sale.   And there is no evidence tending to show that the field of corn was in any way re-seized at any time, and certainly not during the life of the execution or the term of office of the constable.   The authorities are clear that when the crop that was still standing in the field or resting in the ground has matured, and is ready to be dug or harvested, a formal levy is insufficient; the officer must harvest the crop and bring it into his possession.   Freeman on Executions, sec. 263; *Head v. Fairbanks*, 5 Met. 111.

PHILIPS, P. J.—The execution was delivered to the constable on the fourth day of June, 1886.   It

became a lien on the corn in question from the time of such delivery. Rev. Stat., sec. 3017. The plaintiff was not a subsequent pledgee or purchaser in good faith so as to exempt him from the operation of this lien. The price of the corn was only to be applied, when ascertained, as a credit on a preëxisting indebtedness of Hunt to plaintiff. To constitute him an innocent purchaser, under the statute in question, he must have parted with something of value upon the faith of his purchase, and before he had notice of such prior lien or equity. *Ray v. Birdseye*, 5 Hill, 619. The plaintiff parted with nothing, for he was only to give the credit "as the corn was gathered and removed to plaintiff's place in Nodaway county." He had given no such credit up to the day of the sale under execution; and there is no ground to question, scarcely, that he knew all about this execution. He is to be treated as having notice of the lien. Not being in possession of the property, and merely claiming the right to the possession under a parol contract with the defendant in execution, he occupies no better attitude in this controversy than Hunt himself.

The gist of this controversy is, had the constable taken such steps under his writ of execution as gave Hunter & Brothers the better claim to the possession of this corn, bought by them at the execution sale? It is not important to consume valuable time and space in discussing the requisites of a valid levy of a writ of execution on that class of personal property which admits of an actual manucaption, or reduction to possession. A levy implies a seizure; and where the character of the property is such that it may be taken possession of and removed, the officer should do so, or if left in its place, he should either remain with it, or place some one over it as his deputy or bailee, so as to exercise exclusive dominion and control of it, and to notify the public not to deal with it. But regard is always had to the character and situation of the property. The property in controversy is a growing crop

of corn, yet drawing nourishment from the ground; and the sufficiency of the levy is to be determined by the rules applicable to such seizure. Herman on Executions (sec. 161) says: "An actual taking does not imply an actual touching of the property, but merely such a course of proceeding as is calculated to reduce it to the dominion of the law; and an assertion made by an officer, that he levies or takes property by virtue of a writ in his possession, if the property is in his view, or where he can, if necessary, take it into his custody, is an actual taking possession of the property; or if he exercises that dominion owners ordinarily do. It is not necessary to its validity that the owner of the property should assent to it. But where the species of property is such that actual possession cannot be taken, as a growing crop, then some notorious act, as nearly equivalent to actual seizure as practicable, may be substituted for it. Hence, in levying upon a growing crop, the officer must go to the premises, and announce that he seizes the crop to answer the exigencies of the writ; or call disinterested parties to witness his open assertion of the levy." So Freeman on Executions (secs. 260, 261–263) says: "It is not sufficient that the officer merely makes an inventory of the property, and endorses the levy upon his writ. He must go where the property is. He must have it within his view. It must be where he can exercise control over it. And he must exercise, or assume to exercise control over it. He must do some act by reason of which he could be successfully prosecuted as a trespasser, if it were not for the protection afforded him by the writ. But in order to make him responsible as a trespasser, it is not essential that he should remove the property, nor that he should touch it. It is enough that having the property within his view, and where he can control it, he does profess to levy and to assume control of the property by virtue of the execution, and with the avowed purpose of holding the property to answer the exigencies of the writ; for one who to that extent assumes dominion over the goods

of another is a trespasser, unless he is justified by a valid writ. \* \* \* The cases which pronounce against secret levies do not, as a general rule, require that the levy be accompanied by that degree of notoriety which attends a visible and open change of possession. They only prohibit levies in which there has been a clear attempt to prevent notoriety, and to keep the public ignorant of the true state of the defendant's affairs. \* \* \* In determining the sufficiency of an alleged levy, the character of the property must sometimes be considered. The law does not require impossibilities. Therefore, it does not require that the same acts shall be requisite to a levy upon ponderous or immovable property as upon that of which a complete and visible change of possession may be easily consummated. Growing crops cannot be taken into possession of the officer except by destroying them, or by disseizing the owner of the real estate on which they are growing. When about to levy on them, the officer should give the act as much notoriety as possible. It would be prudent in him to call witnesses and indorse that fact on the writ. In North Carolina he must go on the premises and proclaim the levy. But in other states, the mere indorsement of the levy on the writ seems to be all that is required." As is generally the case, the better rule of law is found to lie between the two extremes.

The constable did go upon the land in this case, and, in view of the property, and in the presence of W. T. Hunt, the only party found on the premises, made the memorandum of levy, and informed him that he did so levy. It was not, therefore, a secret levy. While the books say it would be advisable to go out and bring witnesses to the proclamation and indorse the fact on the return, the law does not make it a pre-requisite to a valid levy. I know of no law that would make such return on a writ evidence of the fact so recited. Such returns are only evidence of the essential facts required by the law to be stated. A constable might not, in some localities, be able, after a half day's

search, to find witnesses; and witnesses might be unwilling to volunteer their services. The validity of the levy ought not to depend on a rule so impracticable in many instances. The acts, under the circumstances of this case, were sufficient in law to constitute a valid levy on a growing crop of corn. There is no value in the suggestion of counsel that it does not appear the constable had present with him the writ of execution. The evidence was that he received the writ on the fourth day of June, 1886. The presumption of the law would be that he had it in his custody and with him until the return day. Nor does the law require that he should have made his indorsement of the levy on the writ at the time. It was sufficient that he made the indorsement before the return of the writ. The memorandum entry at the time was sufficient. *Duncan v. Matney*, 29 Mo. 376-7.

What more does the law exact of a constable in levying on a growing crop of corn? There must be some common sense in the requirements of rules of law. The law allows a growing crop to be levied on as personalty. It cannot be severed or gathered; for that would sap its life. There would be no sense in going to the expense of setting a watch over the field, as the corn could not run off, nor would any one attempt so foolish a thing as to undertake to remove an immature crop. If the levy was valid on the day it was made, why was it not valid on the day of sale? It had not been abandoned by the constable or the plaintiff in the execution. Counsel for respondent seem to think, or hold, that, in case of a levy on such growing crop, valid at the time, yet where the crop matures, and may be harvested or gathered before the day of sale, the officer should, after the maturity, do and perform that act towards the crop which would have been essential had the levy been in the first instance on a mature crop. In support the case of *Head v. Fairbanks*, 5 Met. 111, is cited. That was the case of a levy made on a mature crop, then ready for harvest. The court say, in such

case, the officer must harvest and remove the crop so as to bring it into his possession. This case asserts extreme doctrine, in the light of present adjudications, as to the essentials of a levy on a mature crop. But the court was not discussing or considering the case of a valid levy made on a growing crop, good at the time, and such crop ripening before the day of sale. I have been unable to find any authority to support the proposition that, although a levy may be valid at the time it is made on a growing crop, it may become bad because the officer does not harvest it or place a guard over it before the day of sale. Especially am I unwilling to apply such a rule to the facts of this case. The principal reason assigned by the books and adjudicated cases for the rule requiring the officer to take possession of personal property under levy is, that he may be in position to make delivery thereof on the day of sale to the purchaser. No one else had obtained the possession, in the meantime, of this corn. It was on the day of sale just as it was on the day of levy, standing in the field. The plaintiff had not taken possession under his alleged purchase. His purchase was void as to the execution plaintiffs under the statute. Rev. Stat., sec. 2505. The officer was able to deliver the possession of this corn to the purchaser on the day of sale ; and it is this very possession this suit is to disturb. The plaintiff is not an innocent purchaser, and the rights of no third party, in contemplation of the statute, have intervened to require more as to this levy than could be exacted if the action were brought by the defendant in execution.

We attach no importance to the suggestion of counsel that the constable on the day of the levy had it in mind, if on examination he found a prior mortgage on this corn, not to make a formal entry of the levy on the writ. He did, however, make this formal memorandum of the levy, which, as we have seen, was sufficient. He did announce the fact of the levy to the witness present. His mental reservation was no more

than this : 'If I find the statement of Hunt to be true, on investigation, I will proceed no further in this matter.' The plain meaning of which is, that he would make the levy, and if the fact turned out as Hunt had represented he would abandon it. The date of the levy may be proved by parol, as also the proceeding at the time of the levy. Herman on Ex., sec. 162 ; *Balch v. Potter*, 38 Me. 353 ; *Spiller v. Nye*, 16 Ohio, 16.

After the seizure of the property under the writ it was then in the custody of the law. And, as said by Herman on Executions ( sec. 173 ): "In general when things are *in custodia legis* they cannot be interfered with by a private person, or by another officer acting under the authority of a different court of jurisdiction. They are in the custody of the law until the proper time for their sale, and until such a reasonable time thereafter as may be necessary for the purchaser to remove them."

It was competent for the constable who made the levy and advertisement to proceed to execute the sale, although his term of office had expired before the day of sale—by the election of his successor ; nor was any *venditioni exponas* necessary. *Holmes v. Corbin*, 20 Mo. App. 498.

It is finally suggested by respondent that, as the constable first advertised for sale the corn piled up by Hunt, this should be construed as an abandonment by the officer of his levy on the corn left standing in the field. This is not tenable. The whole crop levied on stood bound for the execution debt. It certainly does not lie in the mouth of the plaintiff, who was aiding the execution defendant in spiriting away the corn in the pile, thereby defeating the advertised sale of this corn, to claim a release as to the residue. This would be to permit a party to take advantage of his own wrong. Certainly the plaintiff did not alter his situation, nor his relation to the corn standing in the field by reason of the constable's advertisement of the corn in the pile. He was engaged in pulling it all away from under the

writ as fast as he could with the help of the execution defendant.

The law and the merits of this case are with the defendants; and they are entitled to another trial. The judgment is accordingly reversed, and the cause is remanded to be proceeded with conformably to this opinion. All concur.