**LOUISIANA PUBLIC SERVICE COMMISSION, Petitioner,**

**v.**

**FEDERAL POWER COMMISSION, Respondent.**

**LOUISIANA GAS SERVICE COMPANY, Petitioner,**

**v.**

**FEDERAL POWER COMMISSION, Respondent.**

**HAMMOND-BATON ROUGE BRICK COMPANY et al., Petitioners,**

**v.**

**FEDERAL POWER COMMISSION, Respondent.**

Nos. 21705–21707.

United States Court of Appeals
Fifth Circuit.

April 6, 1966.

Joseph H. Kavanaugh, Baton Rouge, La., for petitioner Louisiana Public Service Comm.

Andrew P. Carter, Walter J. Suthon, III, New Orleans, La., for petitioner Louisiana Gas Service Co.

Tom H. Matheny, Hammond, La., for petitioner Hammond-Baton Rouge Brick Co. and others.

Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Sol., Abraham R. Spalter, Asst. Gen. Counsel, Harwood G. Martin, Paul A. Sweeney, Sp. Con-

sultant, F.P.C., Washington, D. C., for respondent.

Vernon W. Woods, Willis· L. Meadows, Shreveport, La., for intervenor United Gas Pipe Line Co.

Thomas M. Knebel, Washington, D. C., Garner W. Green, Jackson, Miss., for intervenor Willmut Gas & Oil Co.

Before JONES and WISDOM, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge:

The controlling question presented by these petitions to review and set aside an order[1] and the supporting opinions[2] of the Federal Power Commission is whether the sales of natural gas at wholesale by a pipeline company from its integrated, interstate pipeline system are sales at wholesale in interstate commerce within the meaning of the Natural Gas Act,[3] where such sales are made within the state where the gas is produced, for ultimate public consumption therein, but the gas so sold comes from an admixture of gas, some of which is destined for transportation to and consumption in other states.

Our conclusion is that such sales do come within the terms of the Act, and

---

1. United Gas Pipe Line Company, 30 FPC 560.

2. Opinions 401 and 401A, CP 62–161.

3. The Natural Gas Act may sometimes be referred to herein as the "Act." The provisions of the Act pertinent to this case are 15 U.S.C.A. § 717(b) and (c), § 717a(7), § 717o.

Sec. 717(b): "The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas to or the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas."

Sec. 717(c): "The provisions of this chapter shall not apply to any person engaged in or legally authorized to engage in the transportation in interstate commerce or the sale in interstate commerce for resale, of natural gas received by such person from another person within or at the boundary of a State if all the natural gas so received is ultimately consumed within such State, or to any facilities used by such person for such transportation or sale, provided that the rates and service of such person and facilities be subject to regulation by a State commission. The matters exempted from the provisions of this chapter by this subsection are declared to be matters primarily of local concern and subject to regulation by the several States. A certification from such State commission to the Federal Power Commission that such State commission has regulatory jurisdiction over rates and service of such person and facilities and is exercising such jurisdiction shall constitute conclusive evidence of such regulatory power or jurisdiction. * * * *"

Sec. 717a(7): "'Interstate commerce' means commerce between any point in a State and any point outside thereof, or between points within the same State but through any place outside thereof, but only insofar as such commerce takes place within the United States."

Sec. 717o: "The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this chapter. Among other things, such rules and regulations may define accounting, technical, and trade terms used in this chapter; and may prescribe the form or forms of all statements, declarations, applications, and reports to be filed with the Commission, the information which they shall contain, and the time within which they shall be filed. Unless a different date is specified therein, rules and regulations of the Commission shall be effective thirty days after publication in the manner which the Commission shall prescribe. Orders of the Commission shall be effective on the date and in the manner which the Commission shall prescribe. For the purposes of its rules and regulations, the Commission may classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons or matters. All rules and regulations of the Commission shall be filed with its secretary and shall be kept open in convenient form for public inspection and examination during reasonable business hours. * * * *"

that they are subject to the rate and certificate regulatory jurisdiction of the Federal Power Commission, rather than that of state utility bodies. We therefore uphold the order of the Commission declaring that it, and not the Louisiana Public Service Commission, had such jurisdiction over certain sales at wholesale by United Gas Pipe Company [4] from its interstate pipelines of natural gas produced from fields in southern Louisiana and in the adjoining offshore continental shelf beyond the regular state boundaries,[5] for ultimate consumption in the Florida Parishes [6] of that State.

The proceeding before the Commission originated with a petition by United for a declaratory order, brought under the provisions of the Act and of the Commission's Rules of Practice and Procedure,[7] with respect to the existence or absence of jurisdiction in the Commission to regulate its sales of gas at wholesale for ultimate consumption in the Florida Parishes. United took no position one way or the other on the question presented. Louisiana, the Gas Company, the Brick Company and others intervened, advocating state rather than federal regulatory jurisdiction. Other interested parties intervened and urged that the Commission

had jurisdiction. In due course, the Commission let loose its order and opinions now under attack here, with two of the Commissioners dissenting.

It is conceded that the facts are undisputed, and that only one possible inference may be drawn from them.

United is a natural gas company within the contemplation of the Act, engaged in the business of gathering, transporting and selling natural gas at wholesale for ultimate public consumption. It transports and sells gas both in interstate and intrastate commerce, but gas for both types of sales travels in a commingled stream in the pipelines. The main pipelines involved in this case are part of a fully integrated pipeline system by means of which United transports and sells gas from the states of Texas, Louisiana and Mississippi to industrial customers, pipelines and local distributors in those states and in Alabama and Florida. The question under consideration has no relation to United's purely intrastate pipeline facilities which are completely separate from its interstate system and over which the Commission has not asserted jurisdiction.

The particular portion of United's integrated, interstate system directly in-

4. The following party designations will appear in the opinion:
   Federal Power Commission—"Commission".
   Louisiana Public Service Commission—"Louisiana".
   United Gas Pipe Line Company—"United".
   Louisiana Gas Service Company—"Gas Company".
   Hammond Baton Rouge Brick Company—"Brick Company".

5. While the "onshore" or "offshore" source of the gas in question does not have the importance it had before the Commission, in view of our holding on the question stated at the outset of the opinion, some mention will be made at times of the gas sources in describing the facilities involved. The gas produced from fields within the regular borders of Louisiana will be described as "onshore", while that from fields beyond such borders on that area of the continental shelf submerged in the Gulf of Mexico that would be em-

braced within the boundaries of Louisiana extended seaward will be called "offshore".

6. The parishes in the area of Louisiana north of Lake Pontchartrain and east of the Mississippi River are known in that State as the "Florida Parishes".

7.                    Regulation
   F.P.C., Rules of Practice and Procedure: (18 CFR 1.7(c)):
   "Section 1.7(c). For declaratory orders. Petitions for the issuance, in the discretion of the Commission, of a declaratory order to terminate a controversy or remove uncertainty, shall state clearly and concisely the controversy or uncertainty which is the subject of the petition, shall cite the statutory provision or other authority involved, shall include a complete statement of the facts and grounds prompting the petition, together with a full disclosure of petitioner's interest, and shall conform to the requirements of # # 1.15 and 1.16."

volved here consists of two main pipelines crossing the Florida Parishes on their way from Louisiana to other states, together with the network of interconnecting lines lying between them. A 30 inch line runs from the vicinity of Napoleonville, Louisiana, through the northwest area of these Parishes to Kosciusko, Mississippi. A 14–16 inch line across the southeast portion of the Parishes connects some fields in the area of Lirette, Louisiana with Mobile, Alabama. There are several connections between the two main lines in the Florida Parishes area, making it possible for gas from the two lines to become intermixed. All of the gas gathered from the producers for the Lirette-Mobile line comes from onshore fields, while that for the Napoleonville-Kosciusko line comes from both onshore and offshore fields. When it is so gathered for transportation, some of it is destined for sale at wholesale in Louisiana for ultimate consumption within that State and the balance for transportation to other states for such sale and consumption there. The gas to be sold intrastate is intermixed during transportation with that to be sold interstate, and both types of sales are taken from the commingled stream. In most instances, towns in the Florida Parishes are served from the connecting lines or from the network of smaller lines tying into them, rather than from the main lines. Some of those towns receive gas which comes to the Florida Parishes through only one of the main lines, while others receive gas which is a mixture of that from each of such lines. At the time of the hearing before the Commission, the gas sold by United for consumption in the Florida Parishes represented only a small percentage of that transported in these main lines.

These conditions brought about a conflict resulting from the assertion of jurisdiction by both the Commission and by Louisiana over the same intrastate sales in some portions of the Florida Parishes; and that conflict precipitated the action by United seeking a declaratory order settling the question as to which regulatory body actually had jurisdiction.

The question here involved has been definitely settled against the petitioners by the holding of the Supreme Court in People of State of California v. Lo-Vaca Gathering Co., 379 U.S. 366, 85 S.Ct. 486, 13 L.Ed.2d 357 (1965), and Federal Power Commission v. Amerada Petroleum Corp., 379 U.S. 687, 85 S.Ct. 632, 13 L.Ed. 2d 605 (1965), decided since the present action reached this Court. The facts in each of those cases more strongly supported the argument for state jurisdiction over the gas produced, gathered, transported and sold in the same state than do the facts of this proceeding. In each instance, however, the Supreme Court held that the mixing of intrastate gas with a substantial portion of interstate gas for pipeline transportation in one commingled stream gave the Commission jurisdiction "at the outset over the entire transaction". Those decisions require that we uphold the order of the Commission under consideration in this case without passing on the correctness of the Commission's holding on the effect of commingling onshore and offshore gas.

Our disposition of the question above discussed makes moot the issues as to the effect of commingling onshore and offshore gas, and as to whether the Commission should be ordered to re-open the proceedings before it for the reception of further evidence as to recent developments connected with the offshore gas.

The petitions to set aside the order of the Commission are denied.