Dr. Gordon GREENBERG

v.

Joseph P. BARBOUR, M.D.

and

Jose Hamann, M.D.

and

Emanuel Chat, M.D.

and

Franklyn R. Clarke, M.D.

Civ. A. No. 42199.

United States District Court,
E. D. Pennsylvania.

Feb. 11, 1971.

Julien, Glaser, Blitz & Schlesinger, Albert S. Fein, Philadelphia, Pa., for plaintiff.

John H. Lewis, Jr., Philadelphia, Pa., for Joseph P. Barbour.

Francis E. Shields, Philadelphia, Pa., for Jose Hamann, Emanuel Chat and Franklyn R. Clarke.

## OPINION

JOSEPH S. LORD, III, District Judge.

This is a suit sounding in negligence, or gross negligence, brought by the plaintiff as the result of injuries he sustained at the hands of one Clark E. Hall. It is alleged that Hall presented himself on March 24, 1966, at the Philadelphia State Hospital (Byberry) where he sought medical aid. It is further alleged that defendant Dr. Barbour, the clinical director on standby, at home, on the evening of March 24, was informed by various parties, including a New Jersey psychiatrist, that Hall was dangerous, homicidal and suicidal. After speaking with the psychiatrist, Dr. Barbour allegedly decided to admit Hall and conveyed that decision to defendant Dr. Hamann who was on duty at the hospital. In all, about 2½-3 hours elapsed during which time no doctor spoke with Hall. Hall then left and returned to New Jersey where he assaulted the plaintiff, his family physician, inflicting the injuries for which suit has been brought.

Defendant Dr. Chat is the Assistant Superintendent of the hospital and defendant Dr. Clarke is the Clinical Director. Both are charged with negligence in their supervisory and administrative capacities. At no time relevant were they aware of Hall's presence or condition.

Defendants Clarke, Chat and Hamann have moved for summary judgment on

grounds that there are no genuine issues as to any material fact and that defendants are entitled to judgment as a matter of law. Defendant Dr. Barbour joins in this motion.

■ On an application for summary judgment the court must make all inferences of fact from the proof proffered against the movant and in favor of the party opposing the motion. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ Defendants aver that under the laws of Pennsylvania they did not have the right to take Hall into custody. This does not, however, appear to be the case. In the first instance a person seeking aid may admit himself. Act of June 12, 1951 (P.L. 533) § 301, 50 P.S. § 4402. While this procedure requires a written application by the party, we cannot overlook the fact that Mr. Hall did voluntarily come to the hospital and he was never given the opportunity to so admit himself. Also, voluntary admission does not mean that once admitted Hall could have left at will, as he did here. Pennsylvania law requires that 10 days notice must be given by the patient before he is released. Act of June 12, 1951 (P.L. 533) § 304, 50 P.S. § 4404(c). More importantly, Pennsylvania law does now, and did then, provide for emergency admissions. The Act of June 12, 1951 (P.L. 533) § 316 provided for temporary (not to exceed 10 days) admission upon the application (writing not specified) of a relative and evidenced by the unsworn certification of two qualified physicians. In the present case we have allegations that Hall's wife, psychiatrist, and family physician may have complied. To require a writing from these persons at the exact moment of admittance would render the law meaningless as its express purpose is to safeguard the mentally ill and the community.

The fact that Hall was not a Pennsylvania resident is of no importance. Both Pennsylvania, 50 P.S. §§ 5001–5007 (repealed, 1967 and replaced by 62 P.S. §§ 1121–1126), and New Jersey, 30 N.J. S.A. § 7B-1 to 18, are and were signatories of the Interstate Compact on Mental Health. Article III(a) of that Act reads:

"Whenever a person physically present in any party state shall be in need of institutionalization by reason of mental illness or mental deficiency, he shall be eligible for care and treatment in an institution in that state, irrespective of his residence, settlement or citizenship qualifications."

■ Defendants also contend that 50 P.S. § 4603 provides them with immunity from negligent acts. That section is, however, inapplicable as 46 P.S. § 556 provides that "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature." 50 P.S. § 4707 specifically provides that this act, of which section 4603 is a part, shall take effect on January 1, 1967. The events relevant to this case occurred in March, 1966. The fact that the action was not commenced until March, 1967, does not alter the situation.

■ Any reliance by defendants on the Act of June 12, 1951 (P.L. 533) to limit their liability to acts of gross negligence is unwarranted as that relates only to actions commenced against personnel for alleged wrongful detentions. That section does not relate to the issues of this case.

■ Having determined that ordinary negligence is the proper standard to apply in this case F.R.Civ.P. 56(c) would preclude the entry of a summary judgment as from the evidence thus far obtained genuine issues of material fact do exist on that point. Plaintiff's proofs have sufficiently indicated that defendant Dr. Barbour may have been guilty of negligence in that he, having been informed of Hall's dangerous and homicidal state, did not adequately convey to Dr. Hamann the extent of the danger. Conversely, defendant Dr. Hamann may also be guilty of negligence if he, having been fully warned of Hall's

dangerous condition, did not act within a reasonable time to consummate Hall's admittance.

Defendants Clarke and Chat raise the additional point that their alleged liability is predicated only upon their supervisory relationship with defendants Barbour and Hamann. They further claim that they as state employes cannot be vicariously liable for the acts of co-employes. In this contenzion they are correct. The rule in Pennsylvania is that a public officer is not liable for the negligence of his official subordinates unless he commanded the negligent act to be done. Orris v. Roberts, 392 Pa. 572, 575, 141 A.2d 393, 398–399 (1958). The court there went on to rule that

> " * * * [c]ontrol is by no means the only essential factor. Equally important to the relation of master and servant is the fact as to whose matters or pecuniary interests the subordinate is employed to serve. The Restatement, Agency, § 220(1), in defining a servant specifies two requisites, viz., 'A servant is a person employed to perform services for another *in his affairs* and who, with respect to his physical conduct in the performance of the service, is subject to the other's control or right of control.' Control of the subordinate is but one of the essential elements. It is also necessary to the rule of *respondeat superior* that the subordinate be employed to perform services in the affairs of the master. * * * "

In the instant case defendants Barbour and Hamann are employes of the Commonwealth of Pennsylvania, and while they are under the control of defendants Clarke and Chat, they are performing their services in the affairs of the Commonwealth.

### ORDER

And Now, this 11th day of February 1971, it is ordered that the motion of the defendants Barbour and Hamann for summary judgment be and it hereby is denied.

It is further ordered that the motion of the defendants Clarke and Chat for summary judgment be and it hereby is granted.