Harrison F. LEEDY and Gertrude H. Leedy, his wife, Plaintiffs,

v.

John J. HARTNETT, and Lebanon Veterans Administration Hospital, Defendants.

Civ. No. 80–0201.

United States District Court, M. D. Pennsylvania.

April 9, 1981.

Timothy D. Sheffey, James T. Reilly, Egli, Reilly, Wolfson & Feeman, Lebanon, Pa., for plaintiffs.

Justin K. McCarthy, Bethlehem, Pa., for Alfred S. Wright, Jr., executor of the estate of John J. Hartnett, deceased.

J. Andrew Smyser, Asst. U. S. Atty., Harrisburg, Pa., for Lebanon Veterans Adm. Hospital.

## OPINION

MUIR, District Judge.

This case arose out of an assault upon the Plaintiffs allegedly by one John J. Hartnett, now deceased. The Plaintiffs' claim against the Lebanon Veterans Administration Hospital arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. The Court has jurisdiction pursuant to 28 U.S.C. § 1346. The Plaintiffs allege that the Veterans Hospital was negligent in failing to warn the Leedys of Hartnett's alleged violent tendencies. To the claim against the Veterans Hospital, the Plaintiffs have appended the common law claim of assault and battery against Hartnett's estate with jurisdiction presumably based on the doctrine of pendent jurisdiction as no other basis of jurisdiction is alleged in the amended complaint. Pending before the Court is a motion by the attorney representing Hartnett's executor to withdraw from the case and a motion by the Veterans Administration Hospital for summary judgment. For the following reasons, the Court will grant the motions. In addition, because there is no independent basis of jurisdiction over the Plaintiffs' claim against Hartnett's estate, that claim will be dismissed for lack of subject matter jurisdiction.

■ The attorney representing Hartnett's estate seeks to withdraw from the case on the ground that the estate is insolvent. The executor of the estate has concurred in the request that counsel be permitted to withdraw. The time within which Plaintiffs were to file an opposing brief expired on March 30, 1981 and to date no opposing brief has been filed; consequently, the motion is deemed to be unopposed. Local Rule of Court 401.6. While ordinarily the Court would not permit withdrawal of counsel prior to the entry of an appearance by new counsel, that procedure is not appropriate in this case. It is not desirable to require counsel to continue to serve when there exists no chance of his being compensated for his services and because of the insolvency of the estate there is no reason to expect any other counsel to undertake to represent it; consequently, the motion to withdraw will be granted.

The facts insofar as they are relevant to the hospital's motion for summary judgment are not substantially disputed. To the extent that there are disputes as to material facts, the Court will for the purposes of this motion assume as true the Plaintiffs' factual contentions.

John Hartnett was a disabled veteran of the Korean War. From 1956 through March 1978 he had been a patient at the Lebanon Veterans Administration Hospital on more than 20 occasions. During most of those hospitalizations, he was treated for paranoid schizophrenia and chronic alcoholism. Although at one time Hartnett may have been involuntarily committed, during the times relevant to this action he was a voluntary patient at the hospital. It is the Plaintiffs' contention that Harrison Leedy met Hartnett in Leedy's capacity as a service officer of the Lebanon Veterans of Foreign Wars in 1974. Leedy performed various services for Hartnett such as offering him rides, companionship, and the like. This relationship between Hartnett and Leedy was known to personnel of the hospital.

Throughout his course of treatment at the hospital, its personnel were aware of a history of violent outbursts by Hartnett with incidents spanning at least 10 years. Medical personnel at the hospital had since at least 1977 diagnosed Hartnett as being aggressive, impulsive, and exhibiting unstable behavior caused in large part by his alcoholism and his continued drinking in spite of that condition.

On September 26, 1977, Hartnett discharged himself from the hospital and informed hospital personnel that he would be staying with the Plaintiffs and that his funds could be forwarded to that address. At that time, Hartnett told hospital personnel that he had a standing offer to move in with Mr. Leedy. On March 21, 1978, Hartnett left the hospital and for a few days resided at a hotel in the City of Lebanon. On approximately March 29, 1978, he moved into the Leedy residence at Mr. Leedy's invitation. It was the intention of the Leedys that Hartnett would remain there for a few days until other living arrangements could be made for Hartnett. The Plaintiffs claim that Hartnett was a social guest at their home.

█ On March 31, 1978, the Plaintiffs and Hartnett went to the Myerstown Veterans of Foreign Wars Club to celebrate Hartnett's birthday. During the course of the evening, Mrs. Leedy had two or three mixed drinks, Mr. Leedy had six or seven small bottles of beer and Hartnett drank approximately 24 12-oz. bottles of beer. At approximately 2:00 A.M. the next morning, they left the club and went to the Leedys' residence. After their return, Hartnett drank several more bottles of beer and took 400 milligrams of Thorazine. At some time during that night the Leedys were beaten. The police investigation revealed that there had been no forced entrance into their home. The Plaintiffs did not see who had assaulted them and apparently were not aware of the assault until they awoke on April 1, 1978.

It is the position of the Leedys that Hartnett assaulted them and that the hospital owed to them a duty to warn them of Hartnett's alleged assaultive tendencies and that the breach of that duty was a substantial cause of the assault inflicted on them by Hartnett. The hospital takes the position that the Plaintiffs have failed to present enough evidence that it was in fact Hartnett who assaulted them. It also contends that even if Hartnett did assault the Plaintiffs, the hospital owed no duty to the Leedys to warn them of any danger Hart-

nett might have posed. The hospital also contends that as a matter of law the Leedys assumed the risk of injury by Hartnett and that assuming the hospital was negligent, as a matter of law, the Leedys' negligence was greater than that of the hospital, thereby precluding any award of damages to the Leedys.

The Court concludes that the Leedys have presented sufficient evidence to withstand summary judgment based on the hospital's claim that Hartnett did not commit the assaults but that as a matter of law the hospital owed no duty to warn the Leedys of any danger posed by Hartnett. In light of that determination, there is no need to reach the hospital's latter two arguments. In order to facilitate any review of the Court's disposition of this case, however, the Court concludes that material issues of fact are in dispute as to those defenses thereby precluding summary judgment on those grounds.

There is sufficient circumstantial evidence to create a question for the fact finder whether Hartnett assaulted the Plaintiffs. That evidence is Hartnett's presence in the Leedys' house on the night of the assault, the lack of forced entry, and certain statements made by Hartnett after the assault. The hospital, therefore, is not entitled to summary judgment on the ground that Hartnett did not assault the Plaintiffs.

█ The Federal Tort Claims Act requires the Court to apply the law of the place where the act or omission complained of occurred. 28 U.S.C. § 1346(b). In this case, therefore, the Court must apply the law of the Commonwealth of Pennsylvania. The question presented by the Plaintiffs as to the hospital's duty to them appears to be one of first impression in Pennsylvania. Plaintiffs' theory of liability is that because of the hospital's relationship to Hartnett, which was essentially that of psychiatrist to patient, the hospital owed to the Leedys a duty to warn them of Hartnett's alleged violent tendencies. This theory of liability has been adopted to a certain extent by the states of California, New Jersey, and Flori-

da. The United States District Courts for the Districts of North Dakota and Nebraska have held that such would be the law in those states. *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 551 P.2d 334 (1976); *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979); *Department of Health and Rehabilitative Services v. McDougall,* 359 So.2d 528 (1978) (Fla.); *The Merchants National Bank & Trust Company of Fargo v. United States,* 272 F.Supp. 409 (D.N.D.1967); *Lipari v. Sears, Roebuck & Co.,* 497 F.Supp. 185 (D.Neb.1980). The most complete statement of the rationale behind this legal theory is that given by the California Supreme Court in *Tarasoff.*

In *Tarasoff,* the Supreme Court of California was faced with the following factual situation. The patient of the defendant psychotherapists killed a woman two months after he had confided to his psychotherapists his intention to kill that particular woman. The California Court began its analysis by noting that as a general rule a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous. The Court noted that under Restatement (Second) of Torts § 315, when the avoidance of foreseeable harm requires a defendant to control the conduct of another person, or to warn of such conduct, liability is imposed only if the defendant bears some special relationship to the dangerous person or to the potential victim. The Court held that the relationship of psychotherapist to his patient satisfies that requirement. Under those facts, the Court, far from imposing a broad duty on therapists, held that plaintiffs could state a cause of action by "asserting that the therapists in fact determined that Poddar presented a serious danger of violence to Tatiana, or pursuant to the standards of their profession should have so determined, but nevertheless failed to exercise reasonable care to protect her from that danger." *Tarasoff v. Regents of University of California,* 17 Cal.3d 425, 450, 551 P.2d 334 (1976).

The California Supreme Court has refused to extend the rationale of *Tarasoff.* In *Thompson v. County of Alameda,* 167 Cal. Rptr. 70, 27 Cal.3d 741, 614 P.2d 728 (1980), the Court was confronted with a claim against a county alleging negligence in releasing from custody a juvenile delinquent who was known to have dangerous and violent propensities toward young children and who within 24 hours after being released sexually assaulted and murdered plaintiffs' son who resided in the community into which the juvenile was released. In rejecting the plaintiffs' contention that their complaint stated a cause of action, the Supreme Court of California emphasized that in *Tarasoff* there was a specifically foreseeable and identifiable victim. While the Court stated that the intended victim need not be specifically named, he must be "readily identifiable." *Thompson v. County of Alameda,* 167 Cal.Rptr. at 76, 614 P.2d 728. The Court rejected the contention that as a neighborhood child the plaintiffs' decedent was a foreseeable victim of the released juvenile. In circumstances in which an individual poses a risk of danger to a significant portion of the community the Court declined to impose any duty to give warnings primarily because it determined that the value of such warnings was not great. In *Tarasoff* the warnings were directed at making the victim aware of the danger to which she was "uniquely exposed." The threatened target was "precise." In such a case, it is "fair to conclude that warnings given discretely and to a limited number of persons would have a greater effect because they would alert those particular targeted individuals to the possibility of a specific threat pointed at them." *Thompson v. County of Alameda,* 167 Cal.Rptr. at 78, 614 P.2d 728. In contrast to that situation, the case presented in *Thompson* was one in which there was a need to give warnings to a broad segment of the population and the warnings could be only general in nature because no specific threat had been made. Under those circumstances, the Court found that such warnings because of their necessary generality could not be expected to "stimulate increased safety measures."

The New Jersey case of *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500 (1979), which relied heavily on the California Supreme Court's decision in *Tarasoff*, also involved a situation where it was clear to the psychiatrist that his patient posed a particular threat to the decedent. In *McIntosh* the patient had reported numerous fantasies about the decedent and the psychiatrist knew that he had shot a B.B. gun at a car in which the decedent was riding sometime prior to having killed her.

In *Department of Health and Rehabilitative Services v. McDougall*, 359 F.2d 528, 532 (Fla.App.1978), the District Court of Appeals of Florida held that the operators of a psychiatric hospital who negligently allowed a dangerous mental patient to escape would be liable for the resulting injury that such a patient did to another person if the injury was a foreseeable result of the negligence. The Court reached that conclusion without citation to authority or discussion. The case also appears to be somewhat distinguishable on its facts from the instant case in that Hartnett was not a committed patient and was free to leave if he chose to do so. For those reasons, the Court declines to follow the Florida case.

The facts in *The Merchants National Bank & Trust Company of Fargo v. United States*, 272 F.Supp. 409 (D.N.D.1967), are closer to those of *Tarasoff* and *Thompson* than they are to the facts of this case. The district judge's recitation of the facts supporting his conclusion that the U.S. was liable shows that the mental patient who killed his wife had throughout the history of his mental difficulties expressed threats and feelings of resentment against his wife. Moreover, the decedent had expressed to her husband's doctors her fear of her husband, a fear that the district judge found to be warranted. The Court reached its conclusion that the United States was liable for negligence without any analysis of the question of whether the U.S. owed a duty to the decedent. Indeed, it appears from the decision in *The Merchants National Bank & Trust Co.* that the United States did not argue that it owed no duty to the decedent; rather, it appears that the only issue contested was whether the doctor's conduct with respect to the decedent's husband was reasonable. For these reasons, the Court does not find *Merchants National Bank & Trust Company of Fargo* to be persuasive.

In *Lipari v. Sears, Roebuck & Company*, 497 F.Supp. 185, 194–95 (D.Neb.1980), the United States District Court for the District of Nebraska determined that if faced with the question, the Nebraska Supreme Court would adopt the reasoning of the *Tarasoff* case and would limit that ruling to impose a duty on a psychiatric hospital to protect a class of persons if the hospital could have reasonably foreseen an unreasonable risk of harm to them. The facts of that case were that the third party Defendant Veterans Administration failed to exercise proper care and a mentally disturbed patient obtained a shotgun and fired it into a night club, killing plaintiffs' decedent, a person with whom the patient had no relation. The case is distinguishable on its facts from this one in that the plaintiffs argued in *Lipari* that the hospital failed properly to confine its patient, not that there was a lack of warning. To the extent the case is applicable, however, the Court concludes that the reasoning of *Lipari* essentially does away with the limiting reach of the rule of liability announced in *Tarasoff* and *Thompson* in that it appears from the opinion that the plaintiffs' decedent was in no greater danger from his killer than any other member of the public. Because the case appears to impose a duty on a hospital to protect the public at large, the Court declines to follow the reasoning or result in *Lipari*.

The Court has also considered the cases of *Smith v. United States*, 437 F.Supp. 1004 (E.D.Pa.1977), *rev'd on other grounds*, 587 F.2d 1013 (3d Cir. 1978), and *Greenberg v. Barbour*, 322 F.Supp. 745 (E.D.Pa.1971), and finds neither of them to be applicable. In *Smith*, the claim was brought on behalf of a deceased veteran who was killed when he threw himself in front of a train while on an unauthorized absence from a Veterans Administration psychiatric hospital. Under those facts, it may be entirely proper to

impose liability on the United States for negligence in failing to care for the decedent. *Greenberg* involved the imposition of liability because of the failure of a hospital to comply with Pennsylvania law regarding the admission of persons seeking psychiatric confinement. As indicated above, at the time Hartnett allegedly injured the Plaintiffs he was not committed to the Defendant Hospital and Plaintiffs are basing their claim only on a lack of warnings. Plaintiffs' Brief in Opposition to Motion for Summary Judgment at 19.

■ Plaintiffs, recognizing that their case does not fall squarely within the confines of *Tarasoff,* seek to convince the Court that there exists a material issue of fact as to whether they were part of a readily identifiable group of people to whom Hartnett posed a special risk of danger. They seek to define this group as those who had frequent social contact with Hartnett. The Plaintiffs do not contend that Hartnett ever made any threats against them or that he was more likely to become violent toward people in whose presence he was comfortable. Indeed, the past acts of violence relied on by the Plaintiffs to show that Hartnett was dangerous do not fall into any pattern. At most, they demonstrate that Hartnett was prone to violent behavior and that that tendency was aggravated when he drank. There is no evidence from which it can be concluded that even when he drank Hartnett was more likely to become violent toward the people with whom he was drinking rather than others in the area. Plaintiffs appear to be arguing that since Hartnett had a tendency to commit violent acts, people with whom he had frequent contact would be more likely to be victims of such acts and for that reason a special duty was owed to any such people known to the hospital's personnel. Assuming that Pennsylvania would adopt a theory of liability similar to that in *Tarasoff,* the Court is of the view that Pennsylvania would not extend that theory to cover the facts of this case.

In order for the rule of liability announced in *Tarasoff* to be kept within workable limits, those charged with the care of potentially dangerous people must be able to know to whom to give warnings. When, as in *Tarasoff* and *McIntosh,* a particular victim can be identified, there is good reason to impose upon psychiatrists or custodians a duty to warn the intended victim of the danger posed by the person under their care. On the facts of this case, however, Hartnett did not pose any danger to the Leedys different from the danger he posed to anyone with whom he might be in contact when he became violent. This is not a case in which it is alleged that the propensity to violence is increased by frequent contacts with the same people; rather, Plaintiffs' claim that they represent a readily identifiable group rests solely on a statistical probability that the more one saw Hartnett the more likely it is that one would be a victim of any violent outbreak by him. This is not the type of readily identifiable victim or group of victims to which the California Supreme Court made reference in *Tarasoff* or *Thompson.*

The Court reaches this conclusion in spite of the proferred expert testimony of Abram M. Hostetter, M.D., a board certified psychiatrist, that in his opinion the hospital's staff should have been aware of Hartnett's potential for violence and the danger posed to others and should have warned any person with whom the medical staff reasonably knew or should have known Hartnett would have frequent social contact. Were the question before the Court one of fact the proferred testimony of Dr. Hostetter might preclude an award of summary judgment. The question before the Court, however, is whether under the facts of this case, as the Leedys allege the facts to be, the hospital had a duty to warn the Leedys about Hartnett. That question is one of law as opposed to the question of whether the defendant breached that duty, which is a question of fact. Restatement (Second) of Torts § 328B(b); *Aretz v. United States,* 604 F.2d 417, 435 (5th Cir. 1979). Nothing in the proferred testimony of Dr. Hostetter indicates that except for the probability of increased danger because of the frequency of contact Hartnett posed a danger to the

Leedys that was greater than the danger he posed to anyone with whom he had contact. For the reasons indicated above, however, that type of danger is not the specific danger required by *Tarasoff* or *Thompson* in order to impose on the hospital a duty to warn.

Since the Court has concluded that as a matter of law the Veterans Hospital owed no duty to the Plaintiffs, it will grant the hospital's motion for summary judgment. In the interests of judicial economy, however, the Court will also rule on the other bases for the hospital's motion.

■ Material issues of fact exist that preclude summary judgment on the Hospital's claims that the Leedys assumed the risk of injury from Hartnett. While there is evidence of record indicating that the Leedys had some knowledge of Hartnett's violent behavior, the Court cannot rule as a matter of law that they knowingly and voluntarily assumed the risk that he would assault them when they admitted him into their home. Similarly, based on the Plaintiffs' knowledge of Hartnett's past violence and his continuing treatment at the hospital, there is evidence that they were negligent in permitting Hartnett to stay with them. The Court, however, cannot rule as a matter of law that inviting Hartnett into their home and allowing him to consume the quantity of alcohol he did on the night before he allegedly assaulted them was more of a causal factor of their injuries than the Hospital's failure to warn the Leedys of Hartnett's behavioral pattern.

■ Having concluded that the Veterans Administration Hospital is entitled to summary judgment, the Court must address the question of its jurisdiction to hear the Plaintiffs' claims against Hartnett. The amended complaint alleges that the Leedys are citizens of the State of Pennsylvania. It also appears that the executor of Hartnett's estate and Hartnett are and were citizens of Pennsylvania. For that reason, the Court lacks diversity jurisdiction. Plaintiffs' claim against Hartnett does not raise a federal question so that the only basis for jurisdiction is the doctrine of pen-

dent party jurisdiction. *See Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). Assuming that the Court would have the power to adjudicate the Plaintiffs' claims against Hartnett if the Veterans Administration Hospital remained in the case, the Court will dismiss the claim against Hartnett because there is no longer a federal claim to which to append jurisdiction over the non-federal claim against Hartnett's estate. *See Broderick v. Associated Hospital Service of Philadelphia*, 536 F.2d 1, 8 n. 25 (3d Cir. 1976).