Marlene SHERRILL, Plaintiff-Appellant,

v.

Beverly WILSON, et al.,
Defendants-Respondents.

No. 64746.

Supreme Court of Missouri,
En Banc.

June 30, 1983.

George H. Barr, Walter R. Simpson, Kansas City, for plaintiff-appellant.

Hon. John Ashcroft, Atty. Gen., Maria A. Kendro, Joann Leykam, Asst. Atty. Gen., Jefferson City, for defendants-respondents.

BLACKMAR, Judge.

The plaintiff's petition seeks damages for the wrongful death of her son, Chris Wright, at the hands of Gregory S. Corley, who had been committed to the St. Joseph State Hospital by order of the Juvenile Court of Jackson County, Missouri.[1]

The defendants whom the plaintiff presently[2] seeks to hold are the State of Missouri; Beverly Wilson, Director of the Division of Mental Health; Nicholas Bartulica, Superintendent of the St. Joseph State Hospital; Richard K. Jacks, D.O., Chief of the Medical Staff of St. Joseph State Hospital; John Doe, a physician employed at the St. Joseph State Hospital whose identity the plaintiff hopes to learn through discovery; and Corley, the alleged killer.

The amended petition charges that Corley was committed to the State Hospital by order of the Juvenile Court of Jackson County; that he was a dangerous person with severe mental illness; that the defendants nevertheless released him on a two-day pass; that the release was contrary to law; that Corley did not return from the leave conferred by the pass; that the defendants did not take proper steps to return him to custody, as by notifying the sheriff of Buchanan County; and that Corley killed Wright on May 4, 1978 by shooting him in the head 11 times with a rifle. The petition charges that the defendants were "grossly negligent," first in releasing Corley on a pass when they knew of his severe mental illness and dangerous proclivities and, second, in failing to take steps to have him

returned to custody after his absence was discovered or discoverable.

The defendants, except for Corley, moved to dismiss the action. On October 15, 1980 the trial court sustained the motions and ordered the case dismissed as to all of the moving defendants, without specifying reasons. The plaintiff moved pursuant to Rule 81.06 for the entry of final judgment against the moving defendant so that the order could be appealed. The court on November 10, 1980 sustained this motion and entered an appealable judgment. Notice of appeal was filed on December 3, 1980.

The Court of Appeals affirmed as to all defendants except Jacks and "Doe." It held that the state was not liable because of sovereign immunity, and that the defendants in supervisory positions were not liable because of the discretion attending their offices, characterized by the court as "official immunity." The opinion specifically stated that the discretion of a superior official extended to judgment as to the hiring and retention of subordinates. The court held, however, that Doctors Jacks and Doe did not have positions established by statute and did not possess or exercise any part of the state's sovereign power, but rather were physicians with the duty of rendering the same kind of treatment to Corley that private physicians afford their patients, and that they were not insulated from liability for negligence in the performance of these duties, citing *State ex rel. Eli Lilly and Company v. Gaertner,* 619 S.W.2d 761 (Mo. App.1981). The case was therefore remanded for trial as to Jacks, Doe and Corley. We accepted transfer on motion and now decide the case as though it were on original appeal to this Court.

### I. *Appealability*

■ The defendants seek to pretermit our consideration of the merits by claiming

---

1. We treat the petition as amended to include the matters tendered by plaintiff on September 22, 1980, to the effect that the deceased had no spouse or minor children, and that his father declines to join in the suit, even though a formal amendment may not have been made. The petition, so treated, complies with *State ex rel.*

*Slibowski v. Kimberlin,* 504 S.W.2d 237 (Mo. App.1973).

2. The plaintiff sought to discontinue as to Stephen C. Bradford, Director of Administration, and St. Joseph State Hospital, which is not a suable entity.

that the notice of appeal filed December 3, 1980 was too late to permit review of the judgment entered November 10, 1980. Rule 81.04(a) provides that notice of appeal must be filed within 10 days after a judgment becomes "final." Rule 81.05(a) states that a judgment becomes final 30 days after entry. Thus the gross period is 40 days from the entry of final judgment, unless after-judgment motions are filed, of which there were none in this case. The notice of December 3 would appear on its face to be timely, if not premature, under these rules. (By Rule 81.05(b) a premature notice of appeal is effective, and is considered as having been filed immediately after the judgment becomes final).

The defendants argue, however, that the direction of finality pursuant to Rule 81.06 is itself the final judgment of Rule 81.04(a), so that the notice of appeal had to be filed within ten days. We do not agree. The judgment of November 10, 1980 was the first appealable judgment entered in the case. The trial court could have set that judgment aside within 30 days, just as any other judgment, and post-judgment motions could have been filed. *Woods v. Juvenile Shoe Corp.*, 361 S.W.2d 694 (Mo.1962) does not rule the point before us. It simply holds that the court's power to enter an order making a judgment which does not dispose of all parties appealable, as now authorized by Rule 81.06, is not limited to the period of 30 days following the entry of the initial partial and interlocutory judgment.

■ Cases should be heard on the merits if possible. Statutes and rules should be construed liberally in favor of allowing appeals to proceed. *City of Winnebago v. Sharp*, 652 S.W.2d 118 (Mo. banc 1983). A person securing an 81.06 order should undoubtedly proceed as quickly as possible with the appeal, (see 81.05(a)), inasmuch as the whole point of the order is to permit appeal, but this plaintiff acted within the letter and spirit of the governing rules and should be heard on the merits.

## II.  *The Decision to Release*

We turn then to the merits. The question is whether the plaintiff's petition states a claim on which relief can be granted. In testing the petition we must assume that the properly pleaded facts are true and must construe the petition liberally in favor of the pleader. The plaintiff should not be turned out of court through a narrow and technical reading of her petition. But there are limits. The allegation that Corley's release was "contrary to law" is a bald legal conclusion which is not binding on us. *Hardy v. McNary*, 351 S.W.2d 17, 21 (Mo.1961). Nor is there a citation to cases or statutes which would demonstrate that the release on pass violates the law in any respect. The plaintiff, furthermore, has made at least two attempts to amend, and we consider the petition to have been amended in accordance with the latest motion. It is appropriate to impose some responsibility on a pleader, and we are justified in assuming that this plaintiff has set out the facts known to her which she believes will support her claim. If the allegations of the petition, broadly construed, fail to demonstrate a right to relief, then there is no purpose in a remand simply to permit experiment with other possible theories involving additional factual claims which have not even been hinted at up to now. Litigation is burdensome to defendants, regardless of the result. The initiative is with the plaintiff, who has broad freedom of allegation.

### (a)  *The Liability of the Treating Physicians*

■ We deal first with the claims against Doctors Jacks and Doe for allowing Corley to leave the institution on pass. It is alleged that Jacks is "chief of the medical staff," which would indicate that he has supervisory duties, but for present purposes we shall assume that he was active in the care and treatment of Corley. The claim is that Corley was a dangerous person with severe mental illness, that he should have been confined continuously in an institution, that the defendants Jacks and Doe were "grossly" negligent in allowing him to

leave on pass, and that his presence in the world at large was dangerous to members of the public including the plaintiff's decedent. We gather from the petition that the fatal attack did not occur until several weeks after Corley was due to return from his pass, but shall assume that the issuance of the pass was an event in the direct chain of causation.

■ The question, then, is whether the treating physicians owed such a duty to the general public in deciding which involuntary patients should be released on pass, as to give rise to a civil action by a member of the general public for negligent exercise of judgment. The plaintiff gains nothing by branding the negligence "gross." In a line of cases beginning with *McPheeters v. Hannibal and St. Jos. R.R. Co.*, 45 Mo. 22 (1869) and reiterated in *Warner v. Southwestern Bell Tel. Co.*, 428 S.W.2d 596 (Mo.1968), this Court has held that there are no degrees of negligence. The case must be decided on ordinary negligence principles. We conclude that a claim of the kind just described should not be recognized.

Physicians at state institutions are called upon to exercise judgment as to the detention and temporary or permanent release of patients. The statutes in effect at the time of Corley's release, and at the time of the killing, explicate the judgment and discretion reposed in the institutional authorities. Section 202.070, RSMo 1969, authorized the conditional or unconditional discharge of a patient whenever "in the judgment of the superintendent and his staff such discharge is proper," and went on to provide "[t]he decision of the superintendent and his staff on the matter is final." Section 202.830, RSMo 1969 authorized the head of the facility to release a patient on convalescent status "whenever he believes that such release

is in the best interests of the patient." Matters of detention and full or partial release, then, require judgment calls. The statutory provisions just cited were repealed and replaced by a comprehensive statutory plan effective January 2, 1979. Although we are not called upon to interpret or to apply the new statutes, we observe that they also emphasize the need for the exercise of discretion and judgment by the medical staff. *See* §§ 632.175, 632.365, 632.385, 632.390, RSMo Cum.Supp.1982.

Corley was an involuntary patient, but he was not a convict. The law provides for involuntary confinement of persons in mental hospitals if it can be judicially established that they are dangerous to themselves or to the public, but the authority for confinement is hedged about by severe restrictions.[3] The patients are required to be held in the least restrictive environment compatible with their safety and that of the public,[4] and are entitled to treatment.[5] The treating physicians, in their evaluation of the case, well might believe that Corley could be allowed to leave the institution for a prescribed period and that his release on pass might contribute to his treatment and recovery. We do not believe that they should have to function under the threat of civil liability to members of the general public when making decisions about passes and releases. The plaintiff could undoubtedly find qualified psychiatrists who would testify that the treating physicians exercised negligent judgment, especially when they are fortified by hindsight. The effect would be fairly predictable. The treating physicians would indulge every presumption in favor of further restraint, out of fear of being sued. Such a climate is not in the public interest.

---

**3.** Corley was committed under § 202.793, RSMo 1969. Civil commitment proceedings are now governed by §§ 632.300–.365, RSMo Cum.Supp.1982.

**4.** *See O'Connor v. Donaldson*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975); *Covington v. Harris*, 419 F.2d 617 (D.C.Cir.1969); Chambers, Alternatives to Civil Commitment of the Mentally Ill: Practical Guides and Constitutional

Imperatives, 70 Mich.L.Rev. 1107 (1972). *See also*, §§ 630.115.1(10), 632.365, RSMo Cum. Supp.1982.

**5.** *See Rouse v. Cameron*, 373 F.2d 451 (D.C.Cir. 1967); Marshall, The Right to Treatment for Juveniles in Texas: A Legislative Proposal, 13 St. Mary's L.J. 142 (1981). *See also*, § 630.-115.1(6), RSMo Cum.Supp.1982.

Analogies abound. Judges are immune from civil liability for damages.[6] It would be cynical to say that they are favored only because the rules have been made by fellow judges. The reason, rather, is one of policy. Every obstacle to a judicial officer's detached and unencumbered judgment must be removed. There must be protection not only against what might be proved but against what might be claimed. Decisions about temporary or permanent release of involuntary detainees should be likewise unencumbered and unfettered, at least as against negligence claims.

In *Jackson v. Wilson,* 581 S.W.2d 39 (Mo. App.1979), the plaintiff sought to hold the state park director liable for negligently maintaining park facilities so that the plaintiff thought he could dive safely into a pool which turned out to be too shallow. The court discussed the distinction between "discretionary" and "ministerial" duties, which it found to be somewhat artificial, but went on to hold that decisions about park layout and design are discretionary and that there is no civil liability for negligent performance of discretionary duties. The opinion emphasized the need for relieving public servants of the threat of burdensome civil litigation and suggested that courts should not construe the term "discretionary" too narrowly. The opinion is well buttressed by citation of earlier Missouri cases and we believe it accurately expounds Missouri law.

The case of *Cairl v. State,* 323 N.W.2d 20 (Minn.1982), is very close to this one factually. There a mentally retarded and potentially dangerous youth was allowed to leave a state training center for holiday home leave. Suit was filed by victims of a fire he had set. The court held that the state, which had consented to be sued in tort, was not liable on account of a decision involving the exercise of judgment and discretion. The court cited its earlier decision in *Papenhausen v. Schoen,* 268 N.W.2d 565 (Minn.

1978), holding that the individuals in charge of an institution were not liable for errors of judgment in transferring a patient who then escaped and caused injury.

*Jarrett v. Wills,* 235 Or. 51, 383 P.2d 995 (1963), held that the superintendent of a mental institution was not liable for injuries caused by an allegedly dangerous mental patient who was released. The court pointed to statutes similar to ours and emphasized the element of judgment which is present in any decision about release. *Jones v. Czapkay,* 182 Cal.App.2d 192, 6 Cal.Rptr. 182 (1960) held that a health commissioner was not liable for failing to quarantine a person suffering from tuberculosis, who allegedly transmitted the disease to the plaintiff, when it was clear from the applicable statutes that the decision to quarantine was a discretionary one. These cases are supportive of our conclusion.

Also in line is *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), holding that the United States was not liable under the Federal Tort Claims Act for the wrongful death of a person killed in the massive "Texas City" explosion in 1947. It was charged that the United States was negligent by reason of its having accumulated ammonium nitrate fertilizer for shipment abroad in quantities known to be critical and dangerous. The court held that the fertilizer program was a discretionary action which was expressly excluded from the coverage of the Act. Thus there was no liability, even for negligence.

*Dalehite* differs from the case before us in that the "discretionary act" exception was statutory, and the suit was against the government rather than against individuals. Even with these differences, the principles involved are very similar. The statutory exception in *Dalehite* is similar to the conclusion of *Jackson v. Wilson* under the common law. If the government is excused in a case in which it has otherwise consented

**6.** *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Pogue v. Swink,* 365 Mo. 503, 284 S.W.2d 868 (Mo.1955); *DeVault v. Truman,* 354 Mo. 1193, 194 S.W.2d 29 (Mo. 1946) (county (administrative) judge, later elected to higher office, was not liable on account of a decision, within the then jurisdiction of the county court, that the plaintiff should be committed to a mental institution).

to be sued because the matter is discretionary, it would be anomalous to hold the individual who exercised the discretion liable. Any such holding "will inhibit objective and fearless action and discourage responsible men from taking public employment." 2 F. Harper and F. James, *The Law of Torts* § 29.9 (1956). *See also* 3 K. Davis, Administrative Law Treatise § 26.01 (1958); Restatement (Second) of Torts § 895D(3)(a) (1977).

The plaintiff cites *McIntosh v. Milano,* 168 N.J.Super. 466, 403 A.2d 500 (1979). There the plaintiff charged that a private psychiatrist in the course of treating a patient had learned facts which indicated that a patient posed particular danger to the plaintiff's daughter. The psychiatrist did not warn the daughter of the danger, and the patient killed her. The plaintiff sued for the wrongful death and the court denied a motion for summary judgment, holding that facts asserted, if proved, demonstrated a duty on the part of the psychiatrist to warn the potential victim. The court placed strong reliance on the well-known and much discussed case of *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), involving essentially similar facts, in which the Supreme Court of California found that there was a duty to warn the threatened person. The cases are distinguishable from this one, and we do not have to decide whether we would follow them.[7] The danger alleged in both was to a particular individual, and the claimed breach of duty was the failure to warn that individual. The present petition contains no allegation that the defendant physicians were aware that Corley posed a particular danger to the plaintiff's decedent. In the later case of *Thompson v. County of Alameda,* 27 Cal.3d 741, 167 Cal.Rptr. 70, 614 P.2d 728 (1980), the Supreme Court of California recognized the distinction between a mental patient who is known to pose a threat to "a foreseeable or readily identifiable target" and one who is alleged to be dangerous to the public generally. It distinguished *Tarasoff* in finding that *Thompson* did not involve a danger to any particular individual, and held that the defendants were not liable for negligent exercise of discretion. This case is similar to *Thompson.*

The plaintiff also relies on *Austin W. Jones & Co. v. State,* 122 Me. 214, 119 A. 577 (1923), in which the state, which had consented to being sued in tort, was held liable for property damage caused by a fire set by an inmate released from a mental institution on "parole." The opinion did not discuss the elements of discretion and judgment which inhere in any decision about the total or partial release of a mental patient, and we believe that cases such as *Cairl v. State, supra,* and *Jarrett v. Wills, supra,* are better reasoned.

*Mathes v. Ireland,* 419 N.E.2d 782 (Ind. App.1981), and *Semler v. Psychiatric Institute of Washington, D.C.,* 538 F.2d 121 (4th Cir.1976), rely on Section 319 of the Restatement (Second) of Torts, which has to do with the assumption of care and control of one known to be dangerous, and find liability with regard to the failure to restrain or the release of allegedly dangerous mental patients. The cases are distinguishable because Corley was involuntarily committed to the St. Joseph Hospital. Section 319 does not apply to the case before us.

We likewise have little enthusiasm for the case of *Grimm v. Arizona Bd. of Pardons and Paroles,* 115 Ariz. 260, 564 P.2d 1227 (1977), in which the court held that the plaintiff was entitled to go to trial on the claim that the members of the parole board were "reckless" and "grossly negligent" in releasing a prisoner on parole, when the prisoner then killed the plaintiff's decedent during the course of a robbery. The dissenting opinion of Judge Hays seems more

---

**7.** Cases cited in *Tarasoff* which involved the claim that a mental patient was dangerous to a particular individual are *Underwood v. United States,* 356 F.2d 92 (5th Cir.1966), and *Fair v. United States,* 234 F.2d 288 (5th Cir.1956). *Greenberg v. Barbour,* 322 F.Supp. 745 (E.D.Pa.

1971), involved the failure to admit a patient who posed an immediate danger of violence to people in the vicinity. *Bradley Center, Inc. v. Wessner,* 161 Ga.App. 576, 287 S.E.2d 716 (Ga. App.1982), affirmed 250 Ga. 199, 296 S.E.2d 693 (Ga.1982), is in line with *Tarasoff.*

in line with the Missouri authorities and with principles which we consider sound. The approach in *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), dealing with a similar question under 42 U.S.C. § 1983, also seems sounder to us. The Court relied primarily on the fact that the public official did not directly cause the damage, but expressed concern about the inhibitory effect of a finding of liability.[8]

The Court of Appeals in the case before us recognized the rule of non-liability of public officials and employees for discretionary acts. It was willing to apply the rules to those in supervisory positions, but did not go far enough with the principle. "Discretion" relates not so much to the exercise of naked and unrestrained power as to the exercise of judgment. Although the statutes purport to make the superintendent responsible for determining the degree of detention or restriction to be imposed on involuntary patients, the treating physicians act on behalf of the superintendent in making decisions about particular patients.[9] There is little virtue in a rule which would immunize the persons on higher levels while holding the doctors who actually see the patients to civil liability to persons who are not their patients.

We do not deal with the subject that was addressed in *State ex rel. Eli Lilly & Co. v. Gaertner, supra.* The major premise of that holding was that treating physicians at state hospitals should be liable to their patients for malpractice, just as private physicians are. We have no occasion to challenge this proposition, because we do not deal with the duty owed by a physician to a patient. Our holding has to do with the duty of the defendant physicians to the

general public, as more fully explained in Part II(b) of this opinion.

The Attorney General asks us to find that the acts of Corley, rather than the alleged negligence of the defendant physicians, were the "proximate cause" of the plaintiff's son's death. We are not willing to rest our decision on this ground. We assume, as alleged in the plaintiff's petition, that the jury could find that Corley was a dangerous person with severe mental illness, and could also find that danger to members of the public, including the plaintiff, could be reasonably anticipated if he were released. Cf. *Virginia D. v. Madesco Hotel Co.,* 648 S.W.2d 881 (Mo. banc 1983). We nevertheless conclude that the defendant physicians should not be held liable for even foreseeable civil damages simply because they might be found to have exercised negligent professional judgment in permitting him to leave the premises. The decision to hold a person against his will is a very serious one, especially when the detainee has not been convicted of a crime. We believe that an "actual holding of liability would have worse consequences than the possibility of actual mistake." 2 Fleming & James, *supra,* Sec. 29.10. Our conclusion seems consistent with the weight of modern authority.

### (b) *Failure to Return to Custody*

■ The plaintiff also seeks to hold the defendants liable for negligence in failing to take steps to secure Corley's return to custody after he failed to report back from his pass. The Court of Appeals apparently would allow this claim to proceed against the physicians but not against the supervisory defendants.

This part of the claim cannot be parried on the basis that the defendants were exercising discretion or judgment. It is the

---

**8.** *Martinez,* in excluding liability under 42 U.S.C. Sec. 1983 for injury not resulting directly from the act of a person acting under color of state law, shows that Count IV of the amended petition, referring to violation of the decedent's "Fourteenth Amendment rights," does not state a separate claim which might support recovery.

**9.** According to Mental Health Statistics for Fiscal Year Ending June 30, 1982 compiled by the Department of Mental Health, the St. Joseph State Hospital, as of that date, had 22 physicians, 337 resident patients in the hospital, 18 resident patients on authorized absence and 17 resident patients on unauthorized absence. The Missouri Official Manual for 1981–82 shows that there were 600 outpatients.

sense of the petition that the treating physicians had determined that Corley should be released only for a short time, to return to the facility when his pass expired, and that there was no purpose of releasing him unconditionally. We also assume that the interruption of his treatment might exacerbate his mental disorders so as to render him more dangerous. We assume further that the failure to take steps to secure his return was negligent on the part of somebody and that, until the contrary is shown by evidence, the negligence was that of Jacks or of Doe. The plaintiff at the very least would be entitled to use the discovery processes to determine who should have taken the initiative when the absence was discovered, if the claim of failure to return to custody is a legally cognizable one giving rise to civil damages.

We nevertheless conclude that the persons responsible for Corley's custody and treatment do not owe a civil duty to the general public, with regard to securing his return. The recognition of a duty of this kind could place a severe burden on the public service. It would probably not be difficult in many cases to make a case for the jury as to the foreseeability of injury, but this is not sufficient to establish a duty to the public at large. Our conclusions are supported by authority from Missouri and elsewhere.

In *Parker v. Sherman,* 456 S.W.2d 577 (Mo.1970), the plaintiff sued a sheriff because of alleged failure to enforce the gambling laws of the state. The plaintiff claimed that his property was damaged by the presence of disorderly persons and because of their lawless behavior. The court held that the general duties imposed on the sheriff by statute were owed to the public at large, not to particular individuals, and that general duties of this sort did not give rise to civil liability to individuals who sustain damage.

The *Parker* opinion referred to and cited several illustrative cases from other jurisdictions. The venerable case of *South v. Maryland,* 59 U.S. (18 How.) 396, 15 L.Ed. 433 (1856), held that a private citizen who

had been kidnapped and held for ransom could not recover damages from a sheriff who allegedly failed to take proper steps to protect and free him after he had been abducted. A similar case is *Annala v. McLeod,* 122 Mont. 498, 206 P.2d 811 (1949), holding that a sheriff was not civilly liable to property owners whose holdings were destroyed by a mob. *See also Tomlinson v. Pierce,* 178 Cal.App.2d 112, 2 Cal.Rptr. 700 (1960).

A particularly apposite case cited in *Parker* is *Jacobson v. McMillan,* 64 Idaho 351, 132 P.2d 773 (1943) in which a sheriff was held not to be civilly liable for negligently allowing a person to escape from a mental institution, and negligently allowing him to return armed, at which point he shot several persons. The court said that the plaintiffs could not found their civil action on the sheriff's alleged negligence in performing the duties he owed to the public at large. The superintendent of the facility was also held not to be liable.

*Parker* also placed strong reliance on *Leger v. Kelley,* 142 Conn. 585, 116 A.2d 429 (1955) in which the State Commissioner of Motor Vehicles, in violation of state statutes, allowed a vehicle to be registered when it was not equipped with safety glass. The court held that the Commissioner was not liable to an accident victim who had been cut by glass.

In *Nelson v. Freeman,* 537 F.Supp. 602 (W.D.Mo.1982) affirmed, 706 F.2d 276 (8th Cir.1983), the court, interpreting Missouri law, held that officers or employees of the Missouri Division of Family Services were not civilly liable for the death of a child allegedly resulting from their failure to perform their duties under the child abuse statutes. (Sec. 210.110–210.165, RSMo Supp.1982). The opinion concluded that these statutes create only general duties, not specific ones, and do not give rise to civil liability.

Other cases supporting our position are *Crouch v. Hall,* 406 N.E.2d 303 (Ind.App. 1980), declining to find liability against a police officer for negligently failing to investigate a rape and to apprehend the ra-

pist who, a week later, raped the plaintiff's daughter; and *Massengill v. Yuma County,* 104 Ariz. 518, 456 P.2d 376 (1969), holding that wrongful death and personal injury actions did not lie against a deputy sheriff for failure to apprehend drunken drivers he was pursuing who were proceeding side-by-side down the highway. *Nelson v. Freeman, supra,* cites both of these as consistent with Missouri law. We agree. *See also,* Anno. 41 A.L.R.3d 692 (1972).

The plaintiff cites § 202.430, RSMo 1969, now repealed, which authorizes state hospital authorities to call upon the local sheriff to assist in the apprehension of escaped or strayed inmates, and argues that there was an affirmative duty to give this notice. Our Court, in recent years, has been reluctant to find an implied right to a civil action from a statute which does not refer to civil liability in express terms. *Shqeir v. Equifax, Inc.,* 636 S.W.2d 944 (Mo. banc 1982). A minimum requirement is that the would-be plaintiff be a member of a class for whose benefit the statute has been enacted. 73 Am.Jur.2d Statutes, Secs. 432–33. The statute here cited was not passed for the benefit of a discrete class. Its primary purpose is to authorize one governmental agency to call on another for help. There is no indication of any special duty in the language of the statute. The statute does not clearly require the hospital authorities to notify the sheriff. A statute of this kind will not be read as conferring a civil action by implication. Nor may the plaintiff base a civil action on the duty of the hospital authorities to keep the committed person in custody as initially directed by the juvenile court.

What we say here, of course, is not intended to apply to the numerous situations in which a public officer may be held liable for breach of a duty owed to a particular individual. Thus, for many years, our courts have recognized the liability of a sheriff or constable for failure to levy an execution, *Douglass v. Baker,* 9 Mo. 41 (1845), or for an improper levy or sale, *Duncan v. Matney,* 29 Mo. 368 (1860). Numerous other examples could be cited. We

deal only with tort liability arising out of duties owed to the public at large.

We conclude that it is in the public interest to deny a civil action against public employees who fail to secure the return to custody of a person temporarily released from a public mental hospital by decision of the attending physicians, for injury inflicted by the patient on a member of the general public.

The cases cited above also support the conclusions of Part II(a) of this opinion. The treating psychiatrists do not owe duties to the public generally which will support tort liability for negligence.

### III. *Other Defendants*

What has been said as to the liability of the treating physicians applies likewise to the supervisory physicians, Bartulica and Wilson. We also agree with the Court of Appeals that hiring is a discretionary function, and that there should be no right of action against a public official for alleged negligence in the hiring process.

The finding of non-liability for failure to apprehend should also extend to the supervisors.

The state is protected from liability by the doctrine of sovereign immunity. Recent historical discussion need not be repeated. *See Jones v. State Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977); *Bartley v. Special School District of St. Louis County,* 649 S.W.2d 864 (Mo. banc 1983).

The partial judgment appealed from is affirmed.

RENDLEN, C.J., HIGGINS, GUNN, BILLINGS and DONNELLY, JJ., and PUDLOWSKI, Special Judge, concur.

WELLIVER, J., not sitting.