Ayeasha A. BOYER, et al.,
Plaintiffs/Appellants,

v.

Seth TILZER, M.D.,
Defendant/Respondent.

No. 58200.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 28, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 3, 1992.

Application to Transfer Denied
July 21, 1992.

Douglas P. Dowd, St. Louis, for appellants.

Robert L. Presson, Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

After a jury verdict in favor of plaintiffs, the trial court sustained defendant's motion for judgment notwithstanding the verdict and defendant's alternative motion for a new trial. Plaintiffs appeal, we affirm.

On Friday, May 10, 1985, Edwin Thomas was taken into custody by St. Louis Police. After scuffling with police on the street and at the police station, Thomas was eventually transported to Malcom Bliss Mental Health Center, a facility of the Department of Mental Health. Thomas arrived at Malcom Bliss handcuffed to a stretcher and in leg irons. Thomas was said to have been "hearing voices, seeing demons, and thinking he was God." Thomas was given 20mg of Haldol to control his agitation and combativeness. He was involuntarily admitted to the hospital for a period not to exceed 96 hours pursuant to § 632.305.4 RSMo.1986.

At the emergency room, a physician took a medical history from Thomas. The physician's report noted that Thomas had received prior dependency treatment. The report described Thomas as combative, hyperreligious, feeling he was God, manic, and possibly homicidal to his wife.

Defendant Seth Tilzer, M.D., was a second-year psychiatric resident at Malcom Bliss in 1985. He examined Thomas in the afternoon of May 10, 1985. Dr. Tilzer ordered a urine drug screen and noted that Thomas should be observed for psychotic symptoms. Thomas remained in Malcom Bliss over the weekend. On Monday, May 13, 1985, Dr. Tilzer examined Thomas again. Thomas was cooperative, articulate, and well-groomed. Thomas did not recall any of the events of Friday, and denied having hallucinations, delusions, or psychotic symptoms.

Later that morning, Thomas was interviewed by the staff of the ward. Again, Thomas denied hallucinations, delusions, or that he was harmful to himself or others. Thomas was diagnosed as having alcohol abuse and probable PCP psychosis, even though the staff did not have the results of the urine drug screen. Dr. Tilzer recommended dependency treatment for Thomas. Thomas was thereafter released to the custody of the sheriff's department.

Seven days later, Thomas was at his home with his girlfriend, plaintiff Janith Pleasant. Thomas began hallucinating and having delusions and then became violent. He pulled a knife and cut Pleasant's throat and hand. Daniel Boyer came to the aid of Pleasant, and Thomas stabbed Boyer to death. Thomas was arrested and subsequently diagnosed as a paranoid schizophrenic.

Janith Pleasant and Ayeasha Boyer, alleged to be the daughter of Daniel Boyer, brought this suit alleging Dr. Tilzer was negligent in mis-diagnosing and releasing Thomas. A jury agreed, but the trial judge granted defendant's motion for judgment n.o.v. or in the alternative for a new trial. The trial judge found that Dr. Tilzer owed no duty to the general public for either the negligent exercise of his professional judgment or negligence arising from the performance of his discretionary duties. The trial court also found that plaintiffs failed to prove that Dr. Tilzer acted in bad faith and with gross negligence. Finally, the court found that plaintiff Boyer failed to establish that Ayeasha Boyer was the daughter of Daniel Boyer.

■ In *Sherrill v. Wilson*, 653 S.W.2d 661 (Mo.banc 1983), the Supreme Court held that the public duty doctrine and the doctrine of official immunity protected physicians at State mental institutions from civil liability for injuries and damages caused by a released patient. Despite the factual similarity to this case, plaintiffs insist *Sherrill* is not authoritative because § 632.440 RSMo.1980, which became effective after the date of the occurrence in *Sherrill*, was not considered by the Supreme Court. § 632.440 provides, in pertinent part, as follows:

No officer of a public ... mental health facility, nor ... any ... licensed physician ... or any other public official performing functions necessary for the administration of this chapter, ... shall be civilly liable for ... discharging a person ... so long as such duties were performed in good faith and without gross negligence.

Plaintiffs argue that the final clause of the statute, "so long as such duties were performed in good faith and without gross negligence" creates an exception to the common law principles expressed in *Sherrill*. Therefore, plaintiffs maintain, the trial court erred in ruling that defendant was immune from civil liability under *Sherrill*. We need not address the effect of the statutory language because we find dispositive the trial court's third reason for sustaining the judgment n.o.v., that plaintiffs failed to prove defendant's duties were not performed in good faith and without gross negligence. Assuming, without deciding, the statutory language amounts to an expression of legislative intent to confer a private right of action upon others than the patient, it is clear that such an action would require proof of bad faith or gross negligence. Plaintiffs do not suggest any evidence of bad faith but argue that opinion testimony of an expert witness was sufficient to establish gross negligence. We find that plaintiffs failed to produce evidence of gross negligence.

"Gross negligence" is a term which appears infrequently in appellate decisions of this state. Indeed, the Missouri Supreme Court has stated "[t]he plaintiff gains nothing by branding the negligence 'gross'" because Missouri has consistently refused to recognize differing degrees of negligence. *Sherrill*, 653 S.W.2d at 664. Nevertheless, the penchant of the Missouri General Assembly, to use the term "gross negligence", particularly in the area of licensing, was noted in *Duncan v. Missouri Board for Architects*, 744 S.W.2d 524, 532 n. 4 (Mo.App.1988). In *Duncan*, this court held that the use of the term "gross negligence" in a statute authorizing disciplinary

action against architects and professional engineers, did not render the statute unconstitutional because of vagueness. After noting the term "gross negligence" had been defined in various manners in different states, the court in the limited context of a licensing case, approved the following definition adopted by the Administrative Hearing Commission: "[A]n act or course of conduct which demonstrates a conscious indifference to a professional duty." *Id.* at 533.[1] This definition was found satisfactory for the limited purpose of considering the possible revocation of a professional license because the court observed that the definition did not differ from another suggested definition, which defined "gross negligence" to mean "reckless conduct done with knowledge that there is a strong probability of harm and indifference as to that likely harm". *Id.* It is clear that the court considered "conscious indifference to a professional duty" as describing a "reckless act or more seriously a willful and wanton abrogation of professional responsibility ... conduct so egregious as to warrant an inference of a mental state unacceptable in a professional...." *Id.*

The conduct condemned in *Duncan* consisted not only of a total failure to perform clear cut responsibilities but also of giving false assurances that they had been performed. Such conduct obviously exceeds the bounds of mere indifference.

■■■ A thorough review of the evidence in this case, viewed in the light most favorable to plaintiffs, provides no basis for finding a degree of fault beyond ordinary negligence. Plaintiffs had two psychiatrists, Dr. James Beck and Dr. Joseph Schumann, testify as expert witnesses. Dr. Schumann testified that Dr. Tilzer was not grossly negligent because Thomas was not harmful to himself or others on the date of his release from Malcolm Bliss. On the other hand Dr. Beck testified that Dr.

Tilzer exercised poor judgment, but even he did not accuse defendant of "conscious indifference to professional duty" and certainly not of a "willful and wanton abrogation of professional responsibilities." The thrust of Dr. Beck's testimony was that Dr. Tilzer was wrong in diagnosing Edwin Thomas' condition as PCP psychosis and that he should have recognized that Thomas was a paranoid schizophrenic. A misdiagnosis may be negligent, but it does not constitute conscious indifference tantamount to willful and wanton abrogation of professional duties. That the expert labeled this error in judgment "grossly negligent" does not make it so under the law. Rather, it demonstrates the prescience of Judge Blackmar's observation that a "plaintiff could undoubtedly find qualified psychiatrists who would testify that the treating physician exercised negligent judgment, especially when they are fortified by hindsight." *Sherrill,* 653 S.W.2d at 664.

In *State ex rel. Twiehaus v. Adolf,* 706 S.W.2d 443, 446–47 (Mo.banc 1986), the court undertook an extensive examination of decisions from Missouri and other jurisdictions pertaining to the type of conduct required to overcome the defense of official immunity. Recurrent throughout the cited decisions are references to acts conducted maliciously, willfully, corruptly and in bad faith for an improper motive. Plaintiffs' characterization of defendant's conduct as "willful defiance" was held to be irrelevant. *Id.* at 446. We do not believe the legislature intended to create a lesser standard by the enactment of § 632.440 providing for immunity from civil liability for acts "performed in good faith and without gross negligence."

The trial court's finding that plaintiffs failed to prove defendant's duties were not performed in good faith and without gross negligence under § 632.440 is fully supported by a review of the record.

---

1. This definition was adopted by plaintiffs and submitted as a *Not In MAI* jury instruction defining "gross negligence." Although this definition may suffice as a standard by which a professional, familiar with the duties of the profession, judges the conduct of a colleague, we question its adequacy as a standard by which a jury of lay persons may pass judgment upon professional conduct. We repeat the caveat expressed in *Heartland Stores, Inc. v. Royal Ins. Co.,* 815 S.W.2d 39, 41 (Mo.App.1991), "statements in opinions setting forth rules of law are not meant to be literally incorporated into jury instructions...."

Accordingly, the judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.