STATE ex rel. Frances SOUTHERS, Relator,

v.

The Honorable Ward B. STUCKEY, Respondent.

No. WD 47810.

Missouri Court of Appeals, Western District.

Oct. 26, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 30, 1993.

Application to Transfer Denied Jan. 25, 1994.

Jeremiah W. (Jay) Nixon, Atty. Gen., Greg A. Perry, Asst. Atty. Gen., Jefferson City, for relator.

Michael G. Berry, Jefferson City, for respondent.

Before BERREY, P.J., and ULRICH and SPINDEN, JJ.

BERREY, Presiding Judge.

In November 1992, Martha Jo and Ryland Utlaut filed a suit for damages in the Circuit Court of Lafayette County, Missouri. In their petition they allege relator, Frances Souther, negligently performed her duties as the administrator of the Waverly Youth Center, a residential youth facility operated by the Division of Youth Services (DYS) with the Missouri Department of Social services and thereby permitted a resident youth of the facility to escape. The youth then went to the Utlauts home in Waverly, assaulted Mrs. Utlaut and burned their house. The Utlauts state there were at least six other escapes, or "runaways," from the center. The Utlauts also assert that under 13 C.S.R. 110–2.080 the relator breached her duty to immediately notify the local police upon discovery of a runaway. Ms. Southers is also alleged to have:

carelessly, negligently and deliberately failed to maintain adequate security at the facility and supervision of residents in numerous respects, including, but not limited to, the following: she did not provide for an adequate number of staff to supervise the residents of the facility; she did not provide adequate security measures to prevent the residents from leaving the building without authorization; she did not provide for adequate physical barriers preventing escape of residents, such as locks on doors, bars on windows and a perimeter fence of the area; she did not make adequate provision to ensure that the staff were trained in security procedures....

The plaintiffs characterize these duties as "mandatory, ministerial and non-discretionary," and they ask the court to grant relief due to relator's "negligent and reckless acts."

In Count II of their petition, Ryland Utlaut requests damages for the relator's negligence resulting in the loss of the companionship and services of Martha Jo Utlaut. In Count III the plaintiffs request that they be compensated for the property damage to their real estate. Finally, in Count IV, the plaintiffs assert that Frances Southers was per se negligent by failing to immediately notify the police upon discovery of the escape, and she thereby "knowingly aided" the youth to escape, in violation of RSMo § 219.-061 (1975).

Before the relator filed a responsive pleading to the petition, the plaintiffs requested a change of judge. Thereafter, on December 18, 1992, the relator moved to dismiss the petition based on the protections of official immunity and the public duty doctrine.

Prior to a ruling on the motion to dismiss, the plaintiffs notified the relator they would depose the DYS Director on January 15, 1993. Relator refused to proceed with discovery until the court ruled on the motion to dismiss. On December 30, 1992 relator filed motions to stay discovery and to quash the deposition notice.

The relator notified the plaintiffs that she would call her motion to dismiss and the discovery motions for hearing on January 4, 1993. The circuit court granted the plaintiffs' request for change of judge on December 30, 1992, but the Supreme Court did not appoint a new judge until February 8, 1993, when it transferred the Honorable Ward B. Stuckey, of the Sixth Judicial Circuit, Platte County, Missouri, to handle the case.

The plaintiffs then served interrogatories on the relator and notified her that they intended to take her deposition, as well as the deposition of the Director of DYS, on May 13, 1993. The relator then filed a motion to quash deposition motions and subpoe-

na, and request for protective order. Relator also notified the plaintiffs that her motions to dismiss and the discovery motions would be called for hearing on April 29, 1993.

On April 29, 1993, the parties appeared before Judge Stuckey in Platte County and arguments were heard on the motion to dismiss and the discovery motions. The court deferred ruling on relator's motion to dismiss and ordered the parties to proceed with discovery. In the court's docket entry it noted that the court overruled the defendant's motion to stay discovery, motion to quash deposition notice, motion to quash deposition notices and subpoena, and defendant's request for protective order.

■ The relator then notified Judge Stuckey and the plaintiffs that she intended to file a petition for a writ of prohibition with this court, and on May 6, 1993, the petition was filed. On May 18, 1993, this court issued a preliminary rule in prohibition ordering the respondent to cease from exercising any further jurisdiction over the case.

In relator's Points I and II, she alleges the trial court exceeded its jurisdiction or lacked jurisdiction in ordering the parties to proceed with discovery without deciding the relator's immunity claims. Relator claims that because she is the administrator of a state youth facility, she is immune from liability based upon the official immunity doctrine and the public duty doctrine. She requests this court make the preliminary rule in prohibition permanent and absolute.

■ The official immunity doctrine provides that a public official is not civilly liable to members of the public for negligence arising out of the performance of discretionary duties. *Green v. Denison*, 738 S.W.2d 861 (Mo. banc 1987); *Sherrill v. Wilson*, 653 S.W.2d 661 (Mo. banc 1983); *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443 (Mo. banc 1986); *Kanagawa v. State*, 685 S.W.2d 831 (Mo. banc 1985).

The general rule of official immunity is that:

public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but they may be held liable for torts committed when acting in a ministerial capacity. *Kanagawa*, 685 S.W.2d at 835.

Missouri courts have applied official immunity to circumstances similar to those faced by the relator. In *Kanagawa*, the defendant prison official was charged with negligence in providing security measures at a state prison when a prisoner escaped, kidnapped, assaulted and raped the plaintiff. The official's alleged conduct included: knowledge of the violent past of the escapee; improper training and supervision of personnel; failure to provide adequate physical safety barriers; and utilizing staff that could not prevent an escape. *Id.* In rejecting the assertion that these duties were ministerial in nature the Supreme Court stated:

These decisions necessarily involve the exercise of a substantial degree of judgment and require consideration of the manifold aspects of prison operation, the nature and physical design of the facility in question and the vagaries of state appropriations. We believe such decisions should be made free from the fear of civil litigation and liability.

*Id.* at 836–837. The Court held that the prison official was protected by official immunity.

Another case that supports a finding of immunity is *Sherrill v. Wilson*, 653 S.W.2d at 662. In *Sherrill*, one of the defendants was the superintendent of a state mental institution from which a patient failed to return after being given a two day pass. The patient killed plaintiff's son. The plaintiffs alleged that the defendant superintendent was negligent in his failure to warn an individual that the patient posed a threat to that individual. The court held it was proper to dismiss the case as the supervisors at the state mental institution could not be liable for a fatal injury inflicted on a member of the general public by a patient who was temporarily released from custody and who failed to return from leave conferred by a two day pass.

Based upon *Kanagawa* and *Sherrill*, it is clear that the allegations against relator

should be dismissed based upon official immunity.

■ The Utlauts contend relator was also negligent in carrying out ministerial duties. The duties of public officials are generally owed to the state and/or the public at large, and not to specific individuals. *Sherrill,* 653 S.W.2d at 668; *Twiehaus,* 706 S.W.2d at 445. Before an act can be said to be negligent, "there must exist a duty to the individual complaining." *Dix v. Motor Market, Inc.,* 540 S.W.2d 927, 932 (Mo.App.1976). Statutes that create "a duty to the public, and to individuals only as members of the public, will not support a private cause of action in favor of individuals." *Nelson v. Freeman,* 537 F.Supp. 602, 609 (W.D.Mo.1982).

The public duty doctrine is closely related to the concept of official immunity. *Green v. Denison,* 738 S.W.2d at 866. The public duty doctrine " 'recognizes that the duties of public officers are normally owed only to the general public and that a breach of such a duty will not support a cause of action by an individual injured thereby.' " *Twiehaus,* 706 S.W.2d at 445. The plaintiffs have not demonstrated that the regulation serves the "special, direct, and distinctive interests" of individual members of the public, and therefore does not create a duty owed to them, a breach of which provides the basis for a private cause of action. *Id.*

Plaintiffs suggest that 13 C.S.R. 110–2.080 creates a duty on the relator to report immediately upon discovery any runaways from the facility. The regulation reads:

> Immediately upon the discovery and verification that a youth has run away, the local police shall be notified and given the information they will need to help locate the youth.

If the regulation creates a duty, the duty would run "in favor of the state as an entity and not toward . . . any other member of the public." *Twiehaus,* 706 S.W.2d at 445. If the relator's discretion is eliminated and she has a duty to report to the local police, her "duty is one of compliance with the directives of [her] supervisors and extends only to the department and the state as a whole." *Id.*

In *Sherrill,* the court declined to find a duty to report escapes from mental hospitals even where a statute authorized state hospital authorities to contact the local sheriff to assist in the recapture of escapees. *Sherrill,* at 669. We believe *Sherrill* is analogous to the present case.

In an attempt to avoid the public duty doctrine, plaintiffs suggest they are "members of a class" of victims to whom the duty of 13 C.S.R. 110–2.080(1)(A) runs.

The plaintiffs cite *Sherrill* and cases from other states to support their contention. In *Sherrill,* the court analyzed a possible exception to the public duty doctrine where a particular individual might be able to sue for damages if there is an allegation that the person who committed a harm, and who was within the charge of a state official, posed a particular danger to the victim. *Sherrill,* 653 S.W.2d at 666. Plaintiffs' petition makes no such allegation. Any threat of harm presented by this particular youth was to the public in general and not to the Utlauts.

■ In *Sherrill* the Supreme Court was reluctant to find "an implied right to a civil action from a statute which does not refer to civil liability in express terms." *Sherrill,* 653 S.W.2d at 669. The court noted that the primary purpose of such a requirement is to "authorize one governmental agency to call on another for help. There is no indication of any special duty in the language of the statute." *Id.* The regulation cited does not create a civil action by implication since there is no indication that the regulation was "passed for the benefit of a discrete class." *Id.*

Finally, plaintiffs suggest that the public duty doctrine should be abolished. This court rejected a similar argument raised in *Beaver v. Gosney,* 825 S.W.2d 870 (Mo.App. 1992). Missouri courts have shown no inclination to abolish the public duty doctrine. *Id.* The long standing policy reasons supporting the public duty doctrine will not be abolished in this case.

Relator was administrator of the Waverly Youth center in June of 1991. As such, she is protected by both the official immunity doctrine and the public duty doctrine. This

court therefore makes permanent and absolute the preliminary rule in prohibition issued on May 18, 1993.

All concur.