Craig VIRGIN, Appellant,

v.

**HOPEWELL CENTER,
et al., Respondents.**

No. ED 78857.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 2, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 2002.

Application for Transfer Denied Feb. 26, 2002.

Joseph Scott Rubin, Law Firm of Rubin, Joseph S. Law Office, Clayton, MO, for Appellant.

Brent W. Baldwin, St. Louis, for Hopewell.

Kenneth Bean, St. Louis, for BJC Health Systems.

Robert Haar, for Washington University.

Robert Haar, St. Louis, for Keith Issenberg.

Paul E. Kovac, St. Louis, for St. Louis University.

Philip Willman, St. Louis, for Maria Sadowska.

Lawrence Smith, Clayton, for Kevin Miller.

Kristen Garroway, St. Louis, for Dept. of Mental Health.

### Introduction

SULLIVAN, Presiding Judge.

Craig Virgin (Appellant) appeals the trial court's Order and Judgment dismissing his Second Amended Petition with prejudice for failure to state a claim. We affirm.

### Facts

In his Second Amended Petition, Appellant alleged the following. On January 29, 1997, Lauretta Arnold (Arnold) was driving the wrong way on Interstate 64 in St. Clair County, Illinois, when her vehicle collided head-on with Appellant's vehicle. At the time of the accident, Arnold had a long history of psychiatric treatment with a confirmed diagnosis of bipolar disease, manic, with psychotic features and paranoia. Arnold had had numerous psychiatric hospitalizations, each noting her noncompliance with medication instructions, and recalcitrance toward psychiatric treatment in general. Arnold had been caught speeding on the wrong side of the road, driving with an expired driver's license, driving without insurance, and driving recklessly. She had expressed to her psychiatrist that she had a "death wish" when she drove. Arnold was involuntarily committed in February 1996, and then discharged in December of that year. Appellant claims that Respondents, 14 mental healthcare providers, were negligent for, among other things, failing to warn Arnold, her family, her close associates, the police and the Department of Revenue, that she should not drive a motor vehicle, and for failing to adequately monitor or control her conduct, or take other reasonable steps to limit or control her access to motor vehicles. Appellant did not assert a claim against Arnold.

The trial court sustained Respondents' various motions to dismiss, ruling that the holding in *Matt v. Burrell*, 892 S.W.2d 796 (Mo.App. S.D.1995) and *Sherrill v. Wilson*, 653 S.W.2d 661 (Mo.banc 1983), dictated dismissal of Appellant's claims. These cases hold that a mental healthcare provider does not have a duty to unidentified persons for the acts of a patient.

### Point on Appeal

In his point on appeal, Appellant contends the trial court erred in dismissing his action because Respondents owed Appellant duties under general negligence principles, as a member of the general public, or a subset thereof, to warn Arnold, her family, her close associates, the police, and the Department of Revenue of the foreseeable risk of harm should she drive, and to take other reasonable steps to re-

duce or eliminate the foreseeable risk of harm posed to the public by their patient, Arnold.

## Standard of Review

■ When reviewing the trial court's dismissal of a cause of action, we examine the pleadings, allowing them their broadest intendment, treating all facts alleged as true, and construing the allegations favorably to the pleader. *St. Louis University v. Hesselberg Drug Co.*, 35 S.W.3d 451, 454 (Mo.App. E.D.2000).

## Discussion

In *Sherrill v. Wilson*, 653 S.W.2d 661 (Mo.banc 1983), the plaintiff sued the State of Missouri and various hospital officials and physicians because a mental patient, after being released on a two-day pass from his court-ordered state hospital confinement, killed the plaintiff's son. The plaintiff alleged the defendants were negligent for releasing the patient when they knew of his dangerous proclivities stemming from his mental illness, and for failing to recapture him when he did not return after his two-day pass had elapsed. The trial court dismissed the petition for failure to state a claim for relief. The Missouri Supreme Court granted transfer and held that the treating physicians did not owe a duty to the general public in deciding which involuntary patients should be released on pass, as to give rise to a civil action by a member of the general public for negligent exercise of judgment. *Id.* at 667. The Court also found that the persons responsible for the patient's custody and treatment did not owe a duty to the general public with regard to securing his return. *Id.* at 668.

In *Matt v. Burrell, Inc.*, 892 S.W.2d 796 (Mo.App. S.D.1995), the survivors of a motorist who was killed in a collision with a mental health patient brought a wrongful death action against a mental health center and its employees, alleging that they negligently permitted the patient to leave the facility when she voluntarily presented herself to the facility, was seen there by its employees, and stated that she was going to leave the facility and kill herself by wrecking her car. The Court of Appeals, Southern District, held that the trial court's dismissal was proper because the plaintiffs failed to state a claim against the mental health center and its employees, because they did not have a duty to the public at large. *See id.* at 800–801. In reaching this conclusion, the Court quoted extensively from the reasoning set forth in *Sherrill.*

■ Appellant attempts to distinguish the facts of *Sherrill* and *Burrell* from those of the case at bar, and maintains that their holdings are inapplicable to this case. Appellant begins his argument by pointing out that the Court in *Sherrill* decided a narrow issue that is not before this Court. Appellant would confine *Sherrill's* holding to the narrow issue of whether the treating physicians owed a duty to the general public ***in deciding which involuntary patients should be released on pass,*** as to give rise to a civil action by a member of the general public for negligent exercise of judgment. *Id.* at 664. (emphasis added). *Sherrill's* holding also applied to the plaintiff's allegation that the defendants had failed to secure the patient's return. Similar to *Sherrill, Burrell* involved a decision to release, or not to restrain a patient. Appellant maintains that he has not alleged that Arnold should have been involuntarily committed and "kept under lock and key." Rather, Appellant argues he has alleged that Respondents failed to warn, "and in a variety of ways, to reduce or eliminate the risk of.... Arnold driving erratically." Accordingly, Appellant claims the policy con-

siderations as well as the holdings of *Sherrill* and *Burrell* do not apply to the allegations he has made in the case at bar. We disagree.

■ In *Sherrill*, the Court said, "The treating psychiatrists do not owe duties to the public generally which will support tort liability for negligence." *Id.* at 669; *see also Burrell*, 892 S.W.2d at 801. We do not see how this statement is circumscribed to a duty to confine or restrain. Furthermore, the Court in *Burrell* addressed claims of failure to warn. The plaintiffs in that case alleged that Burrell and its employees failed "to timely call the police or other authority to restrain [the patient]." This claim is an allegation of failure to warn, similar to the claims asserted in the case at bar. *See also,* Timothy E. Gammon and John K. Hulston, *The Duty of Mental Health Care Providers to Restrain Their Patients Or Warn Third Parties,* 60 Mo. L.Rev. 749, 760 (1995). Appellant's request that "this Court recognize a potential duty to warn a class of foreseeable potential victims (i.e., motorists, like Appellant) and a duty to take any other reasonable steps short of commitment to reduce or eliminate a known and foreseeable risk of harm, where the patient is not committed," runs contrary to Missouri law.

■ Of note also is *Bradley v. Ray*, 904 S.W.2d 302 (Mo.App. W.D.1995), in which a next friend brought an action on behalf of a child against the child's stepfather, child's mother, and stepfather's psychologists for injuries sustained as a result of prolonged sexual abuse by her stepfather. The Court held that, as a matter of first impression, the psychologists owed a duty to the child to warn appropriate authorities that the stepfather, their client, presented a serious danger of future violence to the child, who was an identified victim. *Id.* at 312. The Court said:

Specifically, we hold that when a psychologist or other health care professional knows or pursuant to the standards of his profession should have known that a patient presents a serious danger of future violence to a *readily identifiable victim* the psychologist has a duty under Missouri common law to warn the intended victim or communicate the existence of such danger to those likely to warn the victim including notifying appropriate enforcement authorities.

*Id.* (emphasis added). The Court's result did not contradict the holdings of *Sherrill* and *Burrell,* because it turned on this:

The facts alleged in the Petition establish that defendants should have reasonably foreseen that their patient posed a threat of serious future harm to Kelly, an identified victim. Defendants were specifically retained to counsel Mr. Pope regarding his abuse of Kelly. They began treatment and it is alleged they were aware of the possibility of continuing and future abuse. They nonetheless did not inform appropriate authorities while and even after they discontinued counseling Mr. Pope.

*Id.* As discussed more *infra,* foreseeability as to a readily identifiable person will sustain a duty. There are no readily identifiable persons to which we could hold Respondents have a duty in the instant case.

Appellant urges that several more recent decisions govern this case and allow for the imposition of the legal duties proposed by Appellant: *Hoover's Dairy, Inc. v. Mid–Am. Dairymen, Inc.,* 700 S.W.2d 426 (Mo.banc 1985); *Millard v. Corrado,* 14 S.W.3d 42 (Mo.App. E.D.1999); and *Robinson v. Health Midwest Dev. Group,* Slip Op. 58290 (Mo.App.W.D. March 6, 2001). The Missouri Supreme Court has recently accepted *Robinson* for transfer,[1]

and so the Western District's slip opinion has been vacated. Accordingly, we will only address *Hoover's Dairy* and *Millard.*

*Hoover's Dairy* involved the purchaser of an automatic milking system who brought an action against the distributor and seller to recover for negligent installation of the milking system. The Court set out the four elements of a negligence claim: duty, breach, causation, and damages; and then talked about two different ways the first element, duty, can be established:

> [T]he duty of a person to use care and his liability for negligence depend upon the tendency of his acts under the circumstances as they are known or should be known to him. The foundation of liability for negligence is knowledge—or what is deemed in law to be the same thing: opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury. (Citation omitted). Quite often, therefore, knowledge is an element that must be included in a negligence instruction in order to impose the existence of the claimed duty. (Footnote omitted) In some cases, however, the duty itself is said to arise out of a relationship between the parties:

> When the existence of a duty to use due care rests on a relationship between persons, the law has simply placed the actor under obligation for the benefit of another person—the plaintiff—in the given circumstances. Or, more simply, the law has determined that "the interest of the plaintiff which has suffered invasion [is] entitled to legal protection at the hands of the defendant." Thus, essential to liability for negligence is a relationship the law recognizes as the basis of a duty of care between the inflictor of injury and the person injured. The judicial determination of the existence of a duty rests on sound public policy as derived from a calculus of factors: among them, the social consensus that the interest is worthy of protection; the foreseeability of harm and the degree of certainty that the protected person suffered injury; moral blame society attaches to the conduct; the prevention of future harm; consideration of cost and ability to spread the risk of loss; the economic burden upon the actor and the community—the others. (Citations omitted)

*Hyde v. City of Columbia,* 637 S.W.2d 251, 257 (Mo.App.1982). Actual or constructive knowledge in these situations may not be necessary to establish the duty.

*Id.* at 431–432. The Court decided in *Hoover's Dairy* that the duty arose not from any knowledge, but from the relationship between the parties that was created by the seller and distributor once they endeavored to render a service for the purchaser. *Id.* at 433. Although the Court set out the calculus of factors based on public policy that have been used in making a judicial determination of the existence of a duty, it did not specifically apply them in the case before it. However, we applied these factors to determine the existence of a duty in *Millard,* 14 S.W.3d at 47.

*Millard* involved a hospital patient who filed a general negligence and medical negligence action against a surgeon who was

**1.** *Robinson v. Health Midwest Development    Group,* No. SC83645.

on call but absent from the hospital at the time the patient was brought to the hospital needing emergency surgery, claiming that the delay in treatment caused by the surgeon's absence aggravated her injuries. We applied the *Hoover's Dairy* factors in order to find a duty because:

> Plaintiffs claim[ed] the trial court erred in finding that Dr. Corrado could not be held liable for general negligence because he owed no duty of care to Mrs. Millard absent a physician-patient relationship. The trial court concluded that Mrs. Millard could not submit a claim against Dr. Corrado for general negligence because "the specific acts and omissions alleged by plaintiff on the part of Carrado [sic] all necessarily involve a matter of medical science or art requiring special skills not ordinarily possessed by lay persons."

In most cases of medical negligence or malpractice a physician's duty to a patient is derived from the physician-patient relationship. *Richardson v. Rohrbaugh*, 857 S.W.2d 415, 417–18 (Mo.App. E.D.1993). However, when the physician's allegedly negligent acts or omissions do not involve a matter of medical science, a duty may also exist when public policy favors the recognition of a duty or when the harm is particularly foreseeable.

*Millard*, 14 S.W.3d at 46–47. We then went on to apply each of the factors, and found a duty of care. Specifically, we held:

> [T]hat "on call" physicians owe a duty to reasonably foreseeable emergency patients to provide reasonable notice to appropriate hospital personnel when they will be unavailable to respond to calls. This duty exists independently of any duties flowing from a physician-patient relationship. Physicians who cannot fulfill their "on call" responsibilities must provide notice as soon as practicable once they learn of circumstances that will render them unavailable.

*Id.* at 48.

Appellant urges this Court to apply the factors in this case, because we did in *Millard* and found that the defendant physician had a duty despite the lack of a physician-patient relationship. However, neither the facts nor the legal issue presented in *Millard* are on point to the facts in the instant case. *Millard* found a duty on the part of a physician assigned to respond to members of the general public who presented themselves to the hospital emergency room to which that physician is assigned. This duty is to a "reasonably foreseeable" group of people. *Id.* There is no reasonably foreseeable group of people to which we could hold Respondents have a duty in the instant case. Like the duty found in *Hoover's Dairy* to have been created by endeavoring to form a relationship, in *Millard*, we found that "[t]he duty is created by the physician who *agrees to be available* without reservation to treat emergency patients." *Id.* We said that "[w]e are aware of no public interest that is furthered by permitting 'on call' physicians to leave town without providing adequate notice that they will be unable to respond to calls. In short, the duty we establish in this case will not have a detrimental impact on the ability of hospitals to attract physicians to accept 'on call' assignments." *Id.* On the contrary, in the situation presented in the instant case, a finding of no duty furthers public interest. As illustrated so well in *Sherrill*, and quoted in *Burrell*:

> Corley was an involuntary patient, but he was not a convict. The law provides for involuntary confinement of persons in mental hospitals if it can be judicially established that they are dangerous to themselves or to the public, but the authority for confinement is hedged about

by severe restrictions. (Footnotes omitted). The patients are required to be held in the least restrictive environment compatible with their safety and that of the public, and are entitled to treatment. The treating physicians, in their evaluation of the case, well might believe that Corley could be allowed to leave the institution for a prescribed period and that his release on pass might contribute to his treatment and recovery. We do not believe that they should have to function under the threat of civil liability to members of the general public when making decisions about passes and releases. The plaintiff could undoubtedly find qualified psychiatrists who would testify that the treating physicians exercised negligent judgment, especially when they are fortified by hindsight. *The effect would be fairly predictable. The treating physicians would indulge every presumption in favor of further restraint, out of fear of being sued. Such a climate is not in the public interest.* *Sherrill*, 653 S.W.2d at 664; *Burrell*, 892 S.W.2d at 799–800.

■ Furthermore, a finding of no duty furthers the public interest in maintaining the physician-patient privilege. The policy behind this privilege is to protect the patient by allowing him to make full disclosure without fear that the information will be used against him. *Leritz v. Koehr*, 844 S.W.2d 583, 584 (Mo.App. E.D.1993). The purpose of the privilege is to enable the patient to secure complete and appropriate medical treatment by encouraging candid communication between the patient and the physician, free of fear of the possible embarrassment and invasion of privacy engendered by an unauthorized disclosure of information. *State ex rel. Woytus v.*

*Ryan*, 776 S.W.2d 389, 392 (Mo.banc 1989). Establishing a duty in the instant case would erode, to say the least, the physician-patient privilege, as well as subvert the purpose and policy behind it.

Even more conclusive than these different public policy considerations, is the fact that Missouri case law has already decided the specific allegation of duty alleged in the case *sub judice*, and held that it does not exist. Therefore we are not at liberty to heed Appellant's request to apply the factors in this case to create such a duty.

For the foregoing reasons, Appellant's point on appeal is denied. The Order and Judgment of the trial court is affirmed.[2]

LAWRENCE G. CRAHAN, J., and LAWRENCE E. MOONEY, J., concur.

2. Respondent Saint Louis University's Motion to Strike Appellant's Supplemental Legal File is denied as moot.